**MONTANA RAIL LINK, INCORPORATED, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CV 92–79–M–CCL.**

United States District Court, D. Montana, Missoula Division.

Oct. 18, 1994.

Gerald W. Steinbrenner, Margaret L. Sanner, Milodragovich, Dale, Steinbrenner & Binney, Missoula, MT, for plaintiff.

Sherry S. Matteucci, Office of U.S. Atty., Billings, MT, Kris A. McLean, Office of U.S. Atty., Helena, MT, Thomas J. Sawyer, U.S. Dept. of Justice—Tax Div., Washington, DC, for defendant.

## OPINION AND ORDER

LOVELL, District Judge.

This cause is before the court on the parties' cross motions for summary judgment. The motions have been briefed twice, the court ordering additional briefing in order that the parties respond to the United States Supreme Court's reversal of the Ninth Circuit decision *Carlton v. United States,* 972 F.2d 1051 (9th Cir.1992), *rev'd,* — U.S. ——, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994).

Facts

The parties have stipulated to the following facts:

### *Introduction*

1. Montana Rail Link, Inc. ("MRL"), is a corporation organized and existing under the laws of the State of Montana. MRL's principal office and place of business is in the County of Missoula, Montana. MRL is engaged in the primary business of transporting rail freight across approximately 800 miles of owned or leased track.

2. MRL began its operations in or about late October 1987 with approximately 900 employees.

3. From the inception of its operations, MRL has been subject, *inter alia,* to the taxing obligations set out in the Railroad Retirement Tax Act ("RRTA") and other obligations stated in the Railroad Retirement Act ("RRA"). As an employer subject to the RRTA, MRL pays an excise tax, with respect to its employees, on the compensation it pays to its employees for services to MRL. *See* I.R.C. § 3221, *et seq.* As an employer subject to the RRTA, MRL also collects the taxes imposed by the RRTA on the income of MRL's employees, by withholding the amount of the tax from the employees' compensation. *See* I.R.C. § 3201, *et seq.* These taxes are paid over to the Internal Revenue Service ("IRS"). Moreover, MRL annually files its Annual Railroad Retirement and Unemployment Repayment Tax Return Form CT-1 ("Form CT-1") in connection with the payment of such taxes. In addition to filing its annual CT-1 returns with IRS, MRL reports to the Railroad Retirement Board ("RRB") which administers the Railroad Retirement Act. MRL reports to the RRB concerning, *inter alia,* each employee's compensation and the railroad retirement taxes paid thereon, including through regularly submitted computer tapes.

4. From the inception of its operations, MRL has contributed to an Internal Revenue Code Section 401(k) plan for all of its employees.

### *MRL's 1987, 1988 and 1989 Railroad Retirement Tax Payments*

5. On or about February 29, 1988, MRL timely filed its original 1987 Form CT-1 covering MRL's tax period November 1, 1987, through December 31, 1987.

6. MRL's original 1987 Form CT-1 reflected MRL's payment of its taxes and the employees' taxes imposed by the RRTA

based on the employees' compensation. In calculating employees' compensation for railroad retirement tax purposes, MRL included contributions to the 401(k) plan.

7. Throughout MRL's 1987 tax year and at the time MRL filed its original 1987 Form CT–1, MRL's inclusion of 401(k) contributions as taxable compensation for the purpose of calculating tax obligations under the RRTA was incorrect in that 401(k) contributions were not a part of "compensation" within the meaning of the RRTA. This error made by MRL was inadvertent in that MRL was attempting to properly calculate the railroad retirement taxes owed; the error resulted in no financial or other benefits to MRL. Indeed, because of this incorrect inclusion, MRL overpaid 1987 taxes in the amount of $26,190.92.

8. On or about February 28, 1989, MRL timely filed its original 1988 Form CT–1 for MRL's tax period January 1, 1988, through December 31, 1988.

9. MRL's original 1988 Form CT–1 reflected MRL's payment of its taxes and the employees' taxes imposed by the RRTA based on the employees' compensation. In calculating employees' compensation for this purpose, MRL included contributions to the 401(k) plan.

10. Throughout MRL's tax year 1988 and at the time MRL filed its original 1988 CT–1, MRL's inclusion of 401(k) contributions as taxable compensation for the purpose of calculating tax obligations under the RRTA was incorrect in that 401(k) contributions were not a part of "compensation" within the meaning of RRTA. The error made by MRL was inadvertent in that MRL was attempting to properly calculate the railroad retirement taxes owed; the error resulted in no financial or other benefit to MRL. Indeed, because of this incorrect inclusion, MRL overpaid its 1988 taxes by $221,651.97.

11. On or about November 15, 1988, MRL representatives, including MRL Payroll Manager Beverly Gunderson, met with representatives of the RRB, including Marilyn Devries and others. MRL had specifically requested this conference so that it could be better informed regarding the various regulations, taxes, form and reporting requirements to which MRL was subject.

12. At that November 15, 1988, meeting, the RRB representatives advised MRL as to the RRB's position (as well as its understanding of the position of the IRS) that contributions to 401(k) plans were not subject to inclusion as compensation for Railroad Retirement Act purposes. The RRB representatives noted that changes were made to FICA in 1984, but were not extended to the RRTA. They explained that the IRS had not issued a formal revenue ruling on the topic. The RRB representatives provided to the MRL representatives a number of documents outlining the IRS and RRB positions on various aspects of this issue. These documents included:

(a) A copy of an opinion authored by Jerry E. Holmes, Chief Branch 2, Employee Benefits and Exempt Organizations Division, Internal Revenue Service, dated August 15, 1988.

(b) A copy of RRB General Counsel's Opinion L–83–142, dated July 5, 1983.

(c) A copy of RRB Opinion L–83–142.1, dated October 14, 1983.

(d) Correspondence dated March 5, 1987, from the Bureau of Law of the RRB.

13. Relying on the advice and information MRL received at that November 15, 1988, meeting with the RRB, MRL ceased including 401(k) contributions when calculating employees' compensation for purposes of railroad retirement taxes. MRL officials explain, and the IRS does not dispute, that this change was effective as of the end of the 1988 calendar year for purposes of administrative clarity.

14. On or about May 9, 1989, relying on the information and advice given by the RRB, MRL forwarded to the RRB revised correction tapes for 1987 and 1988 taxes. The information on these tapes reflected the changes made by MRL to correct its earlier mistaken overpayments, as discussed above, for tax years 1987 and 1988. The corrections made by MRL reflected the lower amount of railroad retirement taxes contributed by both the employees and MRL.

15. The RRB processed the amendments made by MRL and changed its records to reflect the lower amount of railroad retirement taxes contributed by both the employees and MRL. The United States' position in this case is that no refund should be given to MRL. Accordingly, the RRB will process a request by MRL to change its records to reflect the higher amount of railroad retirement taxes. MRL declines to request any changes until this litigation is completed.

16. On or about June 1989, relying on the information and advice provided by the RRB concerning the law in effect at that time, MRL reimbursed each employee for the portion of such employee's compensation that MRL had mistakenly withheld and paid as taxes in respect of 401(k) plan contributions in 1987 and 1988. The total amount MRL refunded at this time was $93,190.05. Of this total amount, $8,965.09 was in respect of MRL's 1987 withholding and $84,244.96 in respect of its 1988 withholding. MRL officials explain, and the IRS does not dispute, that MRL made this reimbursement so that its actions would be in full compliance with the law in effect at that time.

17. Relying on the information provided by the RRB concerning the law in effect at the time and the method for seeking a refund, MRL planned to seek a refund of its overpaid 1987 and 1988 taxes by means of an adjustment to its 1989 taxes as reflected on its annual CT–1 return.

18. Prior to the enactment of Section 10206 of the Omnibus Budget Reconciliation Act of 1989, the IRS never published any public notice or guidance seeking any change in the tax laws which would require inclusion of 401(k) contributions in calculating compensation for railroad retirement tax purposes. The United States contends, and MRL does not dispute, that the IRS had no duty to make such a publication.

19. MRL never received any actual notice from the IRS, the RRB, or otherwise, that Congress intended to change the railroad retirement tax laws in a manner requiring inclusion of 401(k) contributions in taxable compensation when it made the refund to its employees or at any time until after the enactment of the Omnibus Budget Reconciliation Act of 1989. The United States contends, and MRL does not dispute, that neither the IRS nor the RRB had any duty to provide any such notice to MRL.

20. MRL representatives had no actual knowledge that the railroad retirement laws would be amended in a manner providing for the required inclusion of 401(k) contributions in compensation until after the enactment of the Omnibus Budget Reconciliation Act of 1989. MRL representatives assert, and the IRS does not dispute, that if MRL representatives had had any knowledge or information that such a change was proposed or anticipated and could be retroactively applied, MRL would have made no reimbursement to employees and would not have waited until February 1990 to seek a refund of its overpaid taxes for 1987 and 1988. If the IRS had known the tax laws would change in December of 1989, and had it known that the change would be retroactive, it would have denied such a claim for refund.

### *Amendment of the Railroad Retirement Act*

21. On or about December 19, 1989, the President signed into law the Omnibus Budget Reconciliation Act of 1989, P.L. 101–239.

### *MRL's Attempts to Obtain Refund of Overpayments*

22. On or about February 28, 1990, MRL filed its original 1989 Form CT–1 and, relying on the information it had been given by the RRB, it also sought a refund from the IRS of the excess taxes it had paid for tax years 1987 and 1988. Thus, on the original 1989 Form CT–1, MRL entered a Line 11 downward adjustment of $247,842.89, the amount of MRL's total overpayment for 1987 and 1988. In other words, MRL sought to offset the alleged 1987 and 1988 overpayment against taxes MRL owed for the 1989 year instead of converting its earlier returns or filing a formal refund claim with the IRS. To its original 1989 CT–1, MRL attached a copy of its May 1989 letter to the RRB, explaining the reason for the downward adjustment.

23. The claimed offset for 1989 did not have its desired effect. The IRS did not allow this offset, nor did the IRS treat the matter as a claim for refund of 1987 and 1988 payments. The parties agree that whether or not these were proper "refund claims" is not an issue in this case because, as discussed next, amended returns were filed and the IRS did not treat these as refund claims.

24. On or about February 28, 1991, relying on the information given by the RRB concerning seeking MRL's refunds, MRL filed amended Form CT–1 returns for 1987, 1988, and 1989 to show the corrected amounts for taxable compensation not including I.R.C. § 401(k) contributions, and the corrected railroad retirement taxes thereon. (The amended 1987 Form CT–1 seeks a refund of $28,030.62, which includes the $26,190.92 amount relating to MRL's alleged overpayment for 1987, as well as $1,839.70, an amount not at issue herein.)

25. The IRS treated the 1987 and 1988 "amended" Forms CT–1 as claims for a refund of the taxes MRL alleges it overpaid as a result of the error made in calculating the compensation base as described above. On or about April 16, 1991, the IRS disallowed the 1987 refund claim.

26. On or about July 30, 1991, the IRS disallowed the 1988 refund claim.

27. Had Section 10206(c)(2)(A)(ii) been omitted from P.L. 101–239 as enacted, the IRS would have allowed MRL's claims for refund. It would have refunded MRL the amounts of $26,190.92 for 1987 and $221,651.97 for 1988, together with the interest on the refund to the date of payment in each case. In other words, the United States agrees that the only reason it disallowed MRL's claim for refund was because of the retroactive provision of Section 10206 of the Omnibus Budget Reconciliation Act of 1989. Likewise, MRL concedes that if the retroactive provision is held valid as applied to MRL, and if its estoppel claim fails, MRL is not entitled to any refund.

28. MRL has fully paid its taxes at issue in this case.

**Background**

MRL brings this action seeking refund of taxes paid pursuant to the Railroad Retirement Tax Act (RRTA) in the amounts of $28.030.62 and $221,651.97, for the 1987 and 1988 calendar years, respectively.

The RRTA, which was passed in 1937, is incorporated in the Internal Revenue Code as Chapter 22 (Sections 3201 through 3233), and "is to the railroad industry what the Social Security Act is to the other industries: the imposition of an employment or payroll tax on both the employer and the employee, with the proceeds used to pay pension and other benefits." *Standard Office Building Corp. v. United States,* 819 F.2d 1371, 1373 (7th Cir.1987). Under the RRTA, MRL is required to pay an excise tax equal to a specified percentage of wages, and to withhold a specified percentage of wages as the employees' share of the tax. *Id.*

Prior to 1984, the Internal Revenue Service defined the compensation base for both social security and railroad retirement tax purposes as excluding 401(k) payments made by an employer on behalf of an employee to a qualified plan.[1] This consistent treatment ended as of December 31, 1993, however, with the addition of Section 3121(v) to the Code. Under Section 3121(v), 401(k) employer contributions are treated as wages for social security tax purposes.

No corresponding change in the law was made to the RRTA until the passage of Section 10206 of the Omnibus Budget Reconciliation Act of 1989 (OBRA), Pub.L. No. 101–239, 103 Stat. 2475. Section 10206 amended the RRTA to include 401(k) contributions in the compensation base. By its own terms, Section 10206 applies to remuneration paid after December 31, 1989, as well as "remuneration paid before January 1, 1990, which the employer treated as compensation when paid."

The House Report accompanying the House of Representatives' original version of OBRA states with respect to the then dispa-

---

1. This definition was based on the notion that employees were not in constructive receipt of such payments. *See* I.R.C. § 402(c)(8); Treas. Reg. § 31.3121(a)–2.

rate treatment of 401(k) contributions under RRTA and FICA:

> Contributions to 401(k) deferred compensation plans would be subject to the railroad retirement payroll tax, *bringing the treatment of 401(k) plans into conformity with their treatment under the Social Security Act.*

H.R.Rep. No. 101–247, 101st Cong., 1st Sess., pt. 18, at 41 (1989) (emphasis added). Similarly, the House Conference Report states that the purpose of § 10206 is to "bring the treatment of deferred compensation arrangements, and pensions generally, into conformity with their treatment under FICA." H.R.Conf.Rep. No. 101–386, 101st Cong., 1st Sess., pt. 16, at 44 (1989). As to its retroactive application, the Conference Report states:

> Due to confusion about the taxable status of this remuneration, some employers may have withheld and paid payroll taxes on remuneration paid before January 1, 1990. Because these amounts would already have been credited for some benefit purposes, and because it is likely that some employees would already have begun receiving benefits based on the crediting of such amounts, *no refund of taxes paid on remuneration paid before January 1, 1990, would be made.*

*Id.* (emphasis added).

## Discussion

The parties dispute whether Section 10206 of the Omnibus Reconciliation Act of 1989 applies retroactively to bar MRL's refund claims. The parties' arguments raise questions of due process, equal protection, and equitable estoppel.

### 1. Due Process and Equal Protection Claims

MRL's primary argument for summary judgment in its favor is that application of Section 10206 to this case violates the due process requirements of the Fifth Amendment.

### a. United States Supreme Court's Decision in *Carlton*

The United States Supreme Court recently addressed the question of whether the retroactive application of an amendment to an estate tax statute violates the Due Process Clause of the Fifth Amendment. *Carlton v. United States,* 972 F.2d 1051 (9th Cir.1992), *rev'd,* —— U.S. ——, ——, 114 S.Ct. 2018, 2019, 129 L.Ed.2d 22 (1994). In a 9–0 decision, the Court held, "Because we conclude that retroactive application of the 1987 amendment to § 2057 is rationally related to a legitimate legislative purpose, we conclude that the amendment as applied to Carlton's 1986 transactions is consistent with the Due Process Clause." *Id.* at ——, 114 S.Ct. at 2024.

The taxpayer in *Carlton* sued seeking refund of $2,501,161 in estate taxes disallowed by the Internal Revenue Service under I.R.C. § 2057. In filing the estate tax return on December 29, 1986, the taxpayer took advantage of a loophole closed by an amendment to § 2057.[2] The amendment was enacted on December 27, 1987, but was effective as of the statute's enactment date in October of 1986.

A divided panel of the Court of Appeals for the Ninth Circuit ruled that the retroactive application of the statute was unduly harsh and oppressive and therefore unconstitutional. *Id.* at ——, 114 S.Ct. at 2021. The Ninth Circuit found two factors tantamount to this determination, namely whether the taxpayer had actual or constructive notice of the statute's retroactivity and whether the taxpayer reasonably relied to his detriment on preamendment law. *Id.*

On appeal, the United States Supreme Court reversed. The Supreme Court's analysis begins: "This Court repeatedly has upheld retroactive tax legislation against a due

---

**2.** As enacted, § 2057 granted a deduction for half the proceeds of the sales of employer securities by the executor of an estate to an employee stock ownership plan (ESOP) when the securities were sold before the date on which the estate tax return was required to be filed. The availability of the § 2057 deduction was subsequently limited, however, by the amendment which provided that the securities sold to the ESOP must have been directly owned by the decedent immediately before death.

process challenge." *Id.* (citations omitted). The Court goes on to state that the due process standard applicable to tax statutes with retroactive effect is a "legitimate legislative purpose furthered by rational means." *Id.* at ——, 114 S.Ct. at 2022 (citations omitted). The Court then concludes that the 1987 amendment meets this standard since Congress enacted the provision as a curative measure, without any evidence of an arbitrary or illegitimate purpose, and established only a modest period of retroactivity. *Id.* at ——, 114 S.Ct. at 2023. In his concurring opinion, Justice Scalia (joined by Justice Thomas) proclaims that "[t]he reasoning the Court applies to uphold the statute in this case guarantees that all retroactive tax laws will henceforth be valid." *Id.* at ——, 114 S.Ct. at 2027.

b. Application of *Carlton* to the present case

MRL maintains that *Carlton* is not controlling in this case, advancing the following arguments in support of this contention: 1. The Supreme Court's analysis, relying in part on the enactment's purpose, does not apply in the present case; 2. The period of retroactivity at issue here unconstitutionally exceeds the period in *Carlton;* and 3. *Carlton* does not address Plaintiff's equal protection argument.

For its first argument, MRL attempts to distinguish *Carlton* from the present case by pointing out that in that case the amendment cured unforeseen and substantial losses to the Treasury and furthered the stated congressional purpose.

MRL's argument is not convincing. To begin with, MRL is incorrect in reading the Court's discussion of the fiscal impact of the amendment in *Carlton* as requiring that all retroactive tax legislation be revenue-driven and curative. Rather, the real issue identified by the Court and addressed in that discussion is whether the retroactive effect is supported by a legitimate legislative purpose and furthered by rational means.

Similarly, MRL attempts to sidestep this issue by arguing that, unlike the situation in *Carlton,* application of the retroactive provision of Section 10206 to this case defeats the congressional purpose behind its enactment. This contention is not borne out by the legislative history, however, as the House Conference Report indicates that the retroactive provision is intended to avoid recomputation of retirement benefits *which result in the refund of taxes,* precisely the situation here. Moreover, the plain language of Section 10206 unequivocally states that it applies to "remuneration paid before January 1, 1990, which the employer treated as compensation when paid."

MRL's second argument is also meritless. MRL contends that the retrospective period in this case greatly exceeds the short and limited period required for the practicality of producing national legislation, as contemplated by the Court in *Carlton.*

Consistent with Defendant's position, however, in *Carlton* the Court did not establish a specific time frame for the validity of retroactive legislation. Rather, the Court concluded that "Congress acted promptly and established only a modest period of retroactivity." *Id.* at ——, 114 S.Ct. at 2023. Further, *Carlton* is distinguishable from the present case in that the amendment in that case clarified a recently enacted law whereas Section 10206 changes an existing law. In the latter circumstance, as in this case, there is no immediacy associated with the correction of recent legislation.

As previously stated, the real issue is whether the retroactive effect of Section 10206 is supported by a legitimate legislative purpose and furthered by rational means. The resolution of this issue determines the validity of Plaintiff's due process claim as well as its equal protection claim.[3]

■ There is no question that this standard is met in this case. Section 10206 serves the legitimate purpose of bringing the Railroad Retirement Act into conformity with the Social Security Act with respect to employer contributions to 401(k) plans. In

---

**3.** This is true as to the equal protection claim because Section 10206 does not interfere with a fundamental right nor does it employ a suspect classification. *See Regan v. Taxation with Representation of Washington,* 461 U.S. 540, 547, 103 S.Ct. 1997, 2001, 76 L.Ed.2d 129 (1983).

addition, this is accomplished through rational legislation, including the retroactive provision aimed at the avoidance of administrative confusion and refund claims.

**2. Equitable Estoppel**

■ The complaint in this case asserts that the government is estopped from denying the refund claim and applying Section 10206 retroactively. As the government points out, however, and MRL fails to refute, there is no evidence that there was any affirmative misconduct on behalf of the government, one of the requisite elements of MRL's estoppel claim. *See Watkins v. United States Army,* 875 F.2d 699 (9th Cir.1989). On these grounds, MRL's estoppel claim fails.

**Conclusion**

At the core of MRL's case is the notion that retroactive application of Section 10206 results in harsh and oppressive consequences. MRL argues that this is especially true in light of the fact that it reimbursed $93,190 to its employees based on the belief that the IRS would refund the same amount.

The court is cognizant of MRL's situation but unable to apply equitable principles in this contest with the taxing sovereign. This is made clear by the plain language of Section 10206, its legislative history, and the United States Supreme Court's decision in *Carlton,* which unmistakably reaffirms Congress' broad taxing power, including retroactive legislation. Lastly, not only did the Court reject the taxpayer's harshness argument in *Carlton,* but the result in that case is more harsh than the result here, the amount of taxes at stake there being more than $2,500,000.

For the foregoing reasons,

IT IS HEREBY ORDERED that MRL's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that the government's motion for summary judgment is GRANTED.

Judgment shall be entered accordingly.