# IN THE SUPREME COURT OF IOWA

No. 07–1819

Filed June 4, 2010

**J. THOMAS ZABER,** On Behalf of Himself
and All Others Similarly Situated,

    Appellant,

vs.

**CITY OF DUBUQUE, IOWA,**

    Appellee.

---

Appeal from the Iowa District Court for Dubuque County, Alan L. Pearson, Judge.

City resident appeals from a district court ruling granting the city's motion for partial summary judgment on plaintiff's refund claim. **AFFIRMED AND CASE REMANDED.**

Terry M. Giebelstein, Thomas D. Waterman, and Richard A. Davidson of Lane & Waterman LLP, Davenport, for appellant.

Ivan T. Webber and James R. Wainwright of Ahlers & Cooney, P.C., Des Moines, for appellee.

Terrence L. Timmins, Des Moines, for amicus curiae Iowa League of Cities.

Bruce H. Stoltze of Stoltze & Updegraff, P.C., Des Moines, and Brad A. Schroeder of Hartung & Schroeder LLP, Des Moines, for amicus curiae Iowa Trial Lawyers Association.

**TERNUS, Chief Justice.**

The appellant, J. Thomas Zaber, appeals the district court's dismissal by summary judgment of his claim for a refund of cable television franchise fees imposed by the appellee, City of Dubuque, in excess of the city's cost of regulation. The district court ruled Iowa Code section 477A.7(5) (Supp. 2007) retroactively authorized these fees, rejecting the plaintiff's contention section 477A.7(5) violated his due process rights. We affirm the district court's judgment in favor of the city.

## I. Scope of Review.

Because this appeal arises from a ruling on a motion for summary judgment, we preface our discussion of the facts and issues with a review of the principles governing our examination of the district court's ruling. " 'To obtain a grant of summary judgment on some issue in an action, the moving party must affirmatively establish the existence of undisputed facts entitling that party to a particular result under controlling law.' " *Baker v. City of Iowa City*, 750 N.W.2d 93, 97 (Iowa 2008) (quoting *Interstate Power Co. v. Ins. Co. of N. Am.*, 603 N.W.2d 751, 756 (Iowa 1999)); *see* Iowa R. Civ. P. 1.981(3) (authorizing summary judgment when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law"). Neither party points to any issue of material fact with respect to the application of section 477A.7(5). Thus, the disposition of this case rests on a determination whether the city is entitled to judgment as a matter of law under the undisputed facts.

Whether the city is entitled to judgment as a matter of law turns on whether section 477A.7(5), which ratifies fees imposed and collected prior to its enactment, is a proper and constitutional exercise of

legislative power. The plaintiff does not dispute that the legislature's intent in enacting this provision was to retroactively authorize illegal franchise fees already assessed by municipalities and paid by their residents. Rather, he claims the legislature's action violates his due process rights. We consider the plaintiff's constitutional claim de novo. *Varnum v. Brien*, 763 N.W.2d 862, 874 (Iowa 2009).

## II. Background Facts and Proceedings.

The plaintiff, Thomas Zaber, sued the City of Dubuque on September 5, 2006, claiming the city had collected an illegal tax from him and others similarly situated in the form of franchise fees for gas and electric utilities and for cable television services in excess of the reasonable cost of regulating these industries.[1] Zaber sought a refund of the illegal taxes based on this court's decision in *Kragnes v. City of Des Moines*, 714 N.W.2d 632 (Iowa 2006). In that case, we held franchise fees assessed by the City of Des Moines on gas and electric power services constituted an illegal tax to the extent such fees exceeded the reasonable costs of regulating the franchised activity. *Kragnes*, 714 N.W.2d at 642–43.

The City of Dubuque filed a motion for partial summary judgment, requesting dismissal of the plaintiff's claim for the refund of franchise fees paid for cable television services. This motion rested on the General Assembly's enactment of Iowa Code section 477A.7, which authorized franchise fees on cable television services in excess of the cost of regulation, including fees "assessed by and paid to a municipality prior to May 29, 2007[, the effective date of the act]." Iowa Code § 477A.7(4),

---

[1]This case was certified as a class action pursuant to Iowa Rule of Civil Procedure 1.262(1). Nonetheless, we will refer to the plaintiff in his individual capacity for the sake of simplicity.

(5); *see* 2007 Iowa Acts ch. 201, § 15 (providing the act, "being deemed of immediate importance, takes effect upon enactment," May 29, 2007). The plaintiff resisted this motion on the ground the retroactive aspect of the statute violated his due process rights in two ways: (1) it deprived the plaintiff of an accrued refund claim, and (2) the period of retroactivity exceeded the "modest" period constitutionally permitted.

The district court granted the city's motion for partial summary judgment on the plaintiff's refund claim for cable television fees. It concluded the retroactive provision in the statute was curative legislation that bore a rational relationship to a legitimate governmental purpose, namely, preserving "the revenue cities need to carry out their lawful functions." The district court rejected the plaintiff's due process challenge, ruling retroactive authorization of taxes already collected or assessed was constitutionally permissible and "need not be limited to one year or the previous legislative session," as the plaintiff contended.

The plaintiff filed an application for interlocutory appeal, which this court granted.[2] On appeal, the plaintiff claims the legislature's retroactive authorization of franchise fees in excess of the cost of regulation violates his rights to substantive due process for two reasons. First, it takes away his accrued right to a refund of illegal taxes assessed and collected by the city. Second, the period of retroactivity exceeds the modest period that is constitutionally allowed. To put these issues in context, we first review the events leading up to the enactment of section 477A.7(5).

---

[2]This case was consolidated for appeal with *Curtis v. City of Bettendorf*, No. 07–1856; *Kleiman v. City of Waterloo*, No. 07-1855; and *Lindstrom v. City of Des Moines*, No. 07–1641. The clerk docketed the combined appeal under No. 07–1641. We have issued separate opinions in these cases.

### III. Enactment of Iowa Code Section 477A.7(5).

As noted above, in *Kragnes*, this court examined a municipality's power to charge fees for gas and electric services in excess of the cost of regulating those activities. 714 N.W.2d at 637–43. We held:

> Our decisions reveal that even after the adoption of the home-rule amendment and the enactment of the Home Rule for Cities bill, we have continued to adhere to the position that a fee imposed by a city needs to be related to the reasonable costs of inspecting, licensing, supervising, or otherwise regulating the activity in order to be permitted under a city's home-rule authority. If a fee charged by a city exceeds the amount necessary to inspect, license, supervise, or otherwise regulate the activity, it is nothing more than a tax levy, which the legislature has strictly prohibited.

*Id.* at 641. We concluded that, to the extent the franchise fees charged by the defendant city exceeded its cost of regulation, the fees constituted an illegal tax. *Id.* at 642–43. In the wake of this decision, several lawsuits, including the present case, were filed by residents of various Iowa cities, claiming a five percent franchise fee for cable television services charged by the defendant cities was an illegal tax and should be refunded. *See Lindstrom v. City of Des Moines*, 470 F. Supp. 2d 1002, 1004–05 (S.D. Iowa 2007).[3]

While these actions were pending, the Iowa General Assembly enacted a law relating to franchise fees for cable television services. *See* 2007 Iowa Acts ch. 201. The following provisions of this act are pertinent to our discussion:

> 4. A franchise fee may be assessed or imposed by a municipality without regard to the municipality's cost of inspecting, supervising, or otherwise regulating the franchise, and the fees collected may be credited to the

---

[3]Seven cases filed in state court seeking refunds of illegal "franchise fees" were removed to federal court, where they were consolidated. *See Lindstrom*, 470 F. Supp. 2d at 1004 n.1. Eventually, all seven cases, including the present case, were remanded back to state court for lack of federal court jurisdiction. *Id.* at 1013.

municipality's general fund and used for municipal general fund purposes.

5. To the extent that any amount of franchise fees assessed by and paid to a municipality prior to the effective date of this Act, pursuant to a franchise agreement between a municipality and any person to erect, maintain, and operate plants and systems for cable television, exceeds the municipality's reasonable costs of inspecting, supervising or otherwise regulating the franchise, *such amount is deemed and declared to be authorized and legally assessed by and paid to the municipality.*

*Id.* ch. 201, § 8(4), (5) (emphasis added) (codified at Iowa Code § 477A.7(4), (5)). It is clear from the timing of the enactment and the language used in the statute that the legislature intended section 477A.7(5) to validate any municipality's collection of fees on cable television services in excess of the reasonable costs of inspecting, supervising, or otherwise regulating the franchise, regardless of when the fees were assessed and paid.

The district court relied on the legislature's authorization of past fees in subsection (5) in granting the city's motion for partial summary judgment. It is the constitutionality of this retroactivity provision that lies at the heart of this appeal.

### IV. Nature of Issue Presented.

Before we address the constitutionality of section 477A.7(5), we emphasize the issue presented involves taxes that were not authorized at the time they were exacted by the municipalities,[4] *but which could have been authorized by the state. See* Iowa Const. art. III, § 38A ("Municipal corporations are granted home rule power and authority . . . except that they shall not have power to levy any tax *unless expressly authorized by*

---

[4]As this case is before the court on interlocutory appeal, there has yet to be a final determination on the validity of the franchise fees assessed and collected by the municipality. For purposes of our review of the city's motion for partial summary judgment, however, we assume the five percent franchise fee exceeded the cost of regulation and so, as to such excess, was not authorized.

*the general assembly.*" (Emphasis added.)). Therefore, we are not faced with a situation in which the legislature attempted to ratify or cure a tax that it lacked the underlying power to authorize. As we held in *Kragnes*, the defect in the city's imposition of a tax on cable television services was simply its lack of legislative authority to do so. *See Kragnes*, 714 N.W.2d at 641 (declaring similar charge on gas and electric services to be an unauthorized and illegal tax). Consequently, this case involves not the collection of taxes that government for constitutional reasons lacks the power to impose in some or all instances, but instead involves local taxes that the state has the power to authorize. In other words, this case and others like it do not involve battles between taxpayers and municipalities regarding the inherent power of government to tax. Instead, the real conflict in this case is between the city and state government as reflected in legislation regarding the authority of municipalities to impose certain fees.

In the end, the fundamental issue presented is whether the state as principal could exercise its power to ratify the unauthorized, but otherwise constitutional, acts of its political subdivisions. We turn now to a review of the principles that control our resolution of this issue.

**V. General Principles Governing Substantive Due Process Claims.**

To the extent that legislation is made retroactive, it is not inherently unconstitutional. As this court has noted with respect to retroactive laws in general, " 'In the absence of an express constitutional inhibition retrospective laws are not prohibited as such.' " *State ex rel. Turner v. Limbrecht,* 246 N.W.2d 330, 334 (Iowa 1976) (quoting 73 Am. Jur. 2d *Statutes* § 347, at 485–86), *overruled on other grounds by State ex rel. Miller v. Hydro Mag, Ltd.,* 436 N.W.2d 617, 622 (Iowa 1989);

*accord* 2 Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 41:3, at 398 (7th ed. 2009) [hereinafter *Singer on Statutory Construction*] ("The fact that a statute is retroactive is not sufficient by itself to invalidate it."). The "express constitutional inhibition" claimed by the plaintiff in this case is the Due Process Clause. The plaintiff asserts the Due Process Clause is violated because the legislature's ratification of the franchise fee deprives cable subscribers of a vested right to a refund of the illegally imposed fees, and the five-and-one-half-year period of retroactivity exceeds that which is constitutionally permitted.[5] These arguments implicate substantive due process.[6] *See State ex rel. Miller v. Smokers Warehouse Corp.*, 737 N.W.2d 107, 111 (Iowa 2007) (concluding defendants asserted substantive due process claim because "they do not discuss any notice or hearing deficiencies").

Generally speaking, "[s]ubstantive due process principles preclude the government 'from engaging in conduct that "shocks the conscience," or interferes with rights "implicit in the concept of ordered liberty." ' " *Atwood v. Vilsack*, 725 N.W.2d 641, 647 (Iowa 2006) (considering state due process claim) (quoting *United States v. Salerno*, 481 U.S. 739, 746, 107 S. Ct. 2095, 2101, 95 L. Ed. 2d 697, 708 (1987)); *see also Blumenthal Inv. Trusts v. City of W. Des Moines*, 636 N.W.2d 255, 265 (Iowa 2001) (noting it "is not easy to prove" a substantive due process

---

[5]The parties agree the plaintiff's refund claims are governed by a five-year statute of limitations. *See* Iowa Code § 614.1(4) (2005).

[6]The plaintiff relies on both the Federal Constitution and our state constitution. *See* U.S. Const. amend. V; Iowa Const. art. I, § 9. The plaintiff does not suggest we should employ a different standard under the Iowa Constitution than we use for its federal counterpart. Although we make no distinction in our discussion of the plaintiff's due process argument between the state and federal constitutional claims, we preserve our exclusive prerogative to determine the constitutionality of an Iowa statute challenged under the Iowa Constitution. *Callender v. Skiles*, 591 N.W.2d 182, 187 (Iowa 1999).

violation because " 'substantive due process is reserved for the most egregious governmental abuses against liberty or property rights' " (quoting *Rivkin v. Dover Twp. Rent Leveling Bd.*, 671 A.2d 567, 574–75 (N.J. 1996))).

> A substantive due process analysis begins with an identification of the nature of the right at issue, as that determines the test to be applied. . . . When . . . a fundamental right is not involved, the Due Process Clause "demands no more than a 'reasonable fit' between government[al] purpose . . . and the means chosen to advance that purpose."

*Smokers Warehouse Corp.*, 737 N.W.2d at 111 (citation omitted) (quoting *Reno v. Flores*, 507 U.S. 292, 305, 113 S. Ct. 1439, 1448–49, 123 L. Ed. 2d 1, 18 (1993)).

As noted earlier, the plaintiff claims he was deprived of his right to a refund of fees imposed in excess of the city's authority. The plaintiff's right to a refund is not a fundamental right, and therefore, there need only be a "reasonable fit" between the legislature's purpose in ratifying the past imposition of franchise fees and the means chosen to advance that purpose. *See Home Builders Ass'n of Greater Des Moines v. City of W. Des Moines*, 644 N.W.2d 339, 353 (Iowa 2002) (holding imposition of unauthorized fee did not infringe on a fundamental right, so rational-basis test applied). Additionally, we must presume the 2007 enactment is constitutional. *Smokers Warehouse Corp.*, 737 N.W.2d at 111. This deferential standard is particularly appropriate when we consider the constitutionality of economic legislation. *Fed. Land Bank of Omaha v. Arnold*, 426 N.W.2d 153, 156 (Iowa 1988). Moreover, the "strong deference" accorded economic legislation "is no less applicable when that legislation is applied retroactively." *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729, 104 S. Ct. 2709, 2717, 81 L. Ed. 2d 601,

611 (1984), *superseded by statute on other grounds as stated in Orrego v. 833 W. Buena Joint Venture*, 943 F.2d 730, 735 n.7 (7th Cir. 1991).  It is the plaintiff's burden to prove the legislature's act is unconstitutional by negating " 'every reasonable basis upon which the [act] may be sustained.' " *Exira Cmty. Sch. Dist. v. State*, 512 N.W.2d 787, 793 (Iowa 1994) (quoting *Kent v. Polk County Bd. of Supervisors*, 391 N.W.2d 220, 225 (Iowa 1986)).

### VI. Classification of Legislation as Curative.

As noted above, the district court decided section 477A.7(5) was a curative act that could constitutionally be applied retroactively.  The plaintiff claims this preliminary determination by the district court was wrong, leading the court to the erroneous conclusion that the statute could be applied retroactively to extinguish his claim to a refund.  We think the district court correctly classified the provision at issue as a curative act.

One type of curative act is a statute passed "to validate legal proceedings" or "acts of public . . . administrative authorities." *Singer on Statutory Construction* § 41:11, at 503.  In line with this general principle, our court has long recognized the legislature's power to cure defects in acts by local government that are undertaken without authority or without compliance with the requirements for exercising authority. *See, e.g., Schwarzkopf v. Sac County Bd. of Supervisors*, 341 N.W.2d 1, 4–5, 8 (Iowa 1983); *City of Muscatine v. Waters*, 251 N.W.2d 544, 548–50 (Iowa 1977), *superseded by statute on other grounds as stated in City of Des Moines v. City Dev. Bd.*, 473 N.W.2d 197, 199 (Iowa 1991); *Cook v. Hannah*, 230 Iowa 249, 253–59, 261, 297 N.W. 262, 264–67, 269, *cert. denied*, 314 U.S. 691 (1941); *Chicago, R.I. & P. Ry. v. Rosenbaum*, 212 Iowa 227, 229–34, 238, 231 N.W. 646, 647–49, 651 (1930); *Windsor v.*

*City of Des Moines*, 110 Iowa 175, 179–80, 81 N.W. 476, 477 (1900); *Chicago, R.I. & P. Ry. v. Indep. Dist. of Avoca*, 99 Iowa 556, 561–62, 68 N.W. 881, 882 (1896); *The Iowa R.R. Land Co. v. Soper*, 39 Iowa 112, 116–24 (1874); *Boardman v. Beckwith*, 18 Iowa 292, 294–95 (1865). Although the plaintiff contends the legislature can only validate a defective exercise of power and cannot supply authority that did not exist at the time it was exercised, he is mistaken.

One of our earliest cases dealing with curative tax legislation is *Boardman v. Beckwith*, 18 Iowa 292 (1865). In *Boardman*, the legislature repealed the provisions of a law that allowed a county to levy and assess property taxes for the year of 1858. 18 Iowa at 293–94. During the next legislative session in 1860, the legislature passed a law to enforce delinquent taxes from 1858 that the county assessed and levied in 1858. *Id.* at 294. This court held the 1860 law was a curative act legalizing the taxes assessed and levied by the county in 1858. *Id.* at 294–95.

Another decision dealing with the same issue is *The Iowa Railroad Land Co. v. Soper*, 39 Iowa 112 (1874). In 1873 our court held a tax levied by Sac County for the purpose of paying a judgment rendered against the county was illegal. *Soper*, 39 Iowa at 114. Shortly after this decision, the legislature passed a bill legalizing the judgment taxes levied by the county in 1873. *Id.* at 114–15. A taxpayer challenged the tax, claiming the legislature did not have the authority to legalize the judgment tax. *Id.* at 118. In response to the taxpayer's claim, we stated:

> [T]he General Assembly possesses the power to cure and render legal and valid, by subsequent laws, defective or irregular proceedings, wherever it would have the power to authorize such proceedings in the first instance. Since, therefore, it is within the proper scope of legislative authority to pass general laws for the assessment and collection of taxes, the passage of a general law curing and legalizing the levy and collection of taxes irregularly or illegally levied, is

also an exercise of legislative authority as essentially as is the passage of an original act authorizing the taxation.

*Id.* at 124. In reaching this conclusion, our court did not make a distinction between legislation that attempts to cure the acts of officers void for informality or mistake and legislation that seeks to legalize official acts void for want of authority. Such a distinction is not recognized in this state. *Id.*

In cases decided after *Soper*, we have continued to uphold curative acts ratifying taxes that had been imposed without authority. *E.g.*, *Cook*, 230 Iowa at 261, 297 N.W. at 269; *Rosenbaum*, 212 Iowa at 238, 231 N.W. at 651. Therefore, under Iowa law, so long as the legislature had the power to confer authority on the local public body to so act, it has the power to cure or ratify the local body's act exercised without the requisite authority.[7] *See Singer on Statutory Construction* § 41:11, at 504 (stating "a curative act may validate any past action which the legislature might have authorized beforehand"); *id.* § 41:15, at 514 (stating "legislative and administrative actions of . . . cities . . . may be validated by properly enacted curative statutes").

The present case clearly falls within this well-settled law. Under the Iowa Constitution, "[m]unicipal corporations are granted home rule power and authority . . . except that they shall not have power to levy any tax *unless expressly authorized by the general assembly*." Iowa Const. art. III, § 38A (emphasis added). Here, the local body—the City of Dubuque—imposed a tax on cable television services that it had no

---

[7]The legislative act considered in *City of Modesto v. National Med, Inc.*, 27 Cal. Rptr. 3d 215 (Ct. App. 2005), can be helpfully contrasted. In that case the court held a municipal tax that violated due process and equal protection concepts in the state constitution could not be cured. *City of Modesto*, 27 Cal. Rptr. 3d at 223. This tax is an example of one that the government had no power to impose under any circumstances because its flaw was its discriminatory effect, not a simple absence of taxing authority by the taxing body.

authority to impose. *See Kragnes*, 714 N.W.2d at 641, 643 (declaring similar charge to be an unauthorized and illegal tax). In the next legislative session, the legislature cured the lack of authority to collect such a tax by enacting section 477A.7(5) and by ratifying the taxes that had been previously assessed and paid. Because the legislature had the power to authorize this tax prior to May 29, 2007, it also had the power to validate unauthorized taxes imposed prior to this date. Therefore, section 477A.7(5) is properly classified as a curative act. *See State ex rel. Van Emmerik v. Janklow*, 304 N.W.2d 700, 703 (S.D. 1981) (holding legislative act ratifying unauthorized collection of tax overcharge was a curative act).

**VII. Distinction Between Ratification of Past Tax and Retroactive Imposition of New Tax.**

Before we discuss whether section 477A.7(5) violates principles of substantive due process, it is helpful to understand the distinction between legislative ratification of a tax that has been previously assessed and collected, i.e., curative legislation, and legislation that imposes a new tax or liability on past transactions. The plaintiff relies on cases in the latter category, which involve fundamentally different considerations than those applicable to curative acts, as we will explain in more detail later in our opinion.

The plaintiff claims the "leading modern case on a due process challenge to retroactive tax legislation" is *United States v. Carlton*, 512 U.S. 26, 114 S. Ct. 2018, 129 L. Ed. 2d 22 (1994). While that statement may be true, it is also true that the legislation at issue in the case before us is not a retroactive tax statute like the one considered in *Carlton*. The Iowa legislature did not impose a tax on cable television services; it ratified a tax that cities had previously assessed. A tax statute imposing

a new tax, such as the one in *Carlton*, is fundamentally different than curative legislation ratifying or authorizing a tax that has already been imposed and collected, both in purpose and in its impact on taxpayers.[8] To demonstrate this distinction, we begin with an examination of the *Carlton* decision.

The taxpayer's claim in *Carlton* was based on changes made by Congress to the federal estate tax statute. 512 U.S. at 27, 114 S. Ct. at 2020, 129 L. Ed. 2d at 26. In 1986, Congress adopted an estate tax deduction for the proceeds of sales of stock to employee stock-ownership plans. *Id.* In 1987, Congress amended this deduction to close a loophole, limiting its availability to decedents who directly owned the securities that were sold immediately before death. *Id.* at 29, 114 S. Ct. at 2021, 129 L. Ed. 2d at 27. Congress made this amendment retroactive, as if the limitation had been included in the original 1986

---

[8]Notwithstanding the distinctions between curative legislation and retroactive tax legislation, the test applied to retroactive tax legislation is the same as that applied to curative legislation, i.e., the test "generally applicable to retroactive economic legislation":

> The due process standard to be applied to tax statutes with retroactive effect, therefore, is the same as that generally applicable to retroactive economic legislation:
>
> > "Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by a rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches. . . .
> >
> > "To be sure, . . . retroactive legislation does have to meet a burden not faced by legislation that has only future effects. . . . 'The retroactive aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former' . . . . *But that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose.*"

*Carlton*, 512 U.S. at 30–31, 114 S. Ct. at 2022, 129 L. Ed. 2d at 28 (emphasis added) (quoting *Pension Benefit Guar. Corp.*, 467 U.S. at 729–30, 104 S. Ct. at 2717–18, 81 L. Ed. 2d at 611).

provision. *Id.* The impact of this law was that past transactions were now subjected to a greater tax than they were at the time the transactions occurred. In determining whether the retroactive aspect of the 1987 estate tax amendment met the requirements of due process, the *Carlton* Court noted the purpose of Congress was reasonable—to avoid "a significant and unanticipated revenue loss . . . by denying the deduction to those who had made purely tax-motivated stock transfers"—and the one-year period of retroactivity was "modest." *Id.* at 32, 114 S. Ct. at 2023, 129 L. Ed. 2d at 29. The Court concluded the retroactive application of the tax statute was "rationally related to a legitimate legislative purpose" and, therefore, was "consistent with the Due Process Clause." *Id.* at 35, 114 S. Ct. at 2024, 129 L. Ed. 2d at 31.

Contrary to the plaintiff's assertion in his brief, the statute considered in *Carlton* was not a curative act. The plaintiff cites to the Court's statement that the statute challenged in that case "was adopted as a curative measure." *Id.* at 31, 114 S. Ct. at 2022, 129 L. Ed. 2d at 28. It would be inaccurate to construe this comment as an indication that the tax statute considered in *Carlton* was considered a "curative act" as that term is specially defined under the law. In concluding its discussion of the nature of the statute at issue in *Carlton,* the Court observed that "Congress acted to correct what it reasonably viewed as a mistake in the original 1986 provision that would have created a significant and unanticipated revenue loss." *Id.* at 31–32, 114 S. Ct. at 2022–23, 129 L. Ed. 2d at 29. Justice O'Connor, in her concurring opinion, noted the majority's discussion of Congress's "subjective motivation," and observed:

> Every law touching on an area in which Congress has previously legislated can be said to serve the legislative purpose of fixing a perceived problem with the prior state of

affairs—there is no reason to pass a new law, after all, if the legislators are satisfied with the old one.

*Id.* at 36, 114 S. Ct. at 2025, 129 L. Ed. 2d at 32 (O'Connor, J., concurring). Thus, the comment in *Carlton* with respect to the curative nature of the statute was really a reference to Congress's purpose in enacting the statute—the correction of an unanticipated problem in the original legislation, not whether the statute was classified as a curative act for purposes of retroactivity analysis. *See Mont. Rail Link, Inc. v. United States*, 873 F. Supp. 1415, 1421 (D. Mont. 1994) (stating, in reference to this discussion in *Carlton*, "the real issue identified by the Court and addressed in that discussion is whether the retroactive effect is supported by a legitimate purpose and furthered by rational means"), *aff'd*, 76 F.3d 991 (9th Cir. 1996).

A review of legal authorities considering when an act is curative confirms the conclusion that the tax statute at issue in *Carlton* was not a curative act. The question of when an act is "curative" for purposes of retroactivity analysis is addressed in Singers' noted treatise on statutes and statutory construction, which states in its discussion of retroactivity:

> A curative act is a statute passed to cure defects in prior law, or to validate legal proceedings, instruments, or acts of public or private administrative authorities. *In the absence of such an act the statute would be void for want of conformity with existing legal requirements.*

*Singer on Statutory Construction* § 41:11, at 503 (emphasis added); *accord Schwarzkopf*, 341 N.W.2d at 4; *Waters*, 251 N.W.2d at 548. In *Carlton*, there was no defect in the original statute that would render it void. Congress simply realized in retrospect that the deduction it enacted in 1986 was too broad.

Our court recently recognized such a distinction—between the *purpose* of a legislative act and its *classification* for purposes of

considering its retroactivity—in *Anderson Financial Services, LLC v. Miller*, 769 N.W.2d 575 (Iowa 2009). In *Anderson Financial*, the attorney general claimed an amendment to a credit statute was remedial in nature and, therefore, applied retroactively under the presumption that remedial statutes are presumed to have retrospective operation. 769 N.W.2d at 579–80. We rejected this argument, stating:

> While the *purpose* of the law may be characterized as an effort to "remedy" an unintended gap in the statutory prohibition of usurious interest rates, the statute is not remedial in the sense contemplated by the rule that remedial statutes are presumed to apply retroactively. . . .
>
>     . . . .
>
>     . . . It would not be an exaggeration to suggest that the legislature nearly always has in mind some problem that it seeks to address in a legislative enactment. So, if a mere legislative purpose to remedy a perceived defect in the law made a statute remedial, very few statutes would not fall within this classification.

*Id.* at 580 & n.4.

The same distinction is appropriate when considering the applicability of *Carlton* and similar cases cited by the plaintiff. Clearly, Congress's purpose in enacting the 1987 amendment to the estate tax deduction at issue in *Carlton* was to remedy a perceived defect in the breadth of the deduction, but that is not the type of defect that is contemplated in classifying legislation as "curative" for purposes of retroactivity analysis. The type of defect addressed by a curative act, as defined for purposes of retroactivity analysis, is a failure of the prior legislation to conform to existing legal requirements. That was not the type of legislation involved in *Carlton*. In *Carlton*, Congress changed the law that applied to past transactions; it did not ratify a law that had already been applied to transactions when they occurred, as is the case

here. Thus, the amendment at issue in *Carlton* was not a "curative" act, as that term of art is used in the context of retroactivity.

In summary, *Carlton* and like cases cited by the plaintiff address the retroactivity of a new tax—one that is being assessed and collected *after enactment of the new statute,* i.e., the tax is imposed *after* the event being taxed has occurred.[9] That is not what we have in the present case. Here the legislature did not enact a new tax; it ratified a prior tax that had been assessed and collected *for many years before the legislature's authorization of the tax.* This distinction is one that makes a difference in retroactivity analysis. As our later discussion will illustrate, the purpose of curative, ratifying legislation is sufficient to justify longer periods of retroactivity in contrast to the so-called modest period of retroactivity accorded the imposition of a new tax.

## VIII. Application of Substantive Due Process Test.

We turn now to the application of the substantive due process test identified earlier in our opinion. As we have observed, due process

---

[9]The cases cited by the plaintiff in support of his position, including the Iowa cases, involve tax statutes (statutes imposing a new tax), not curative acts (acts authorizing a previously imposed tax). *See, e.g., United States v. Hemme*, 476 U.S. 558, 106 S. Ct. 2071, 90 L. Ed. 2d 538 (1986) (considering application of law that established unified credit for lifetime and testamentary gifts to gifts made prior to enactment); *United States v. Hudson,* 299 U.S. 498, 57 S. Ct. 309, 81 L. Ed. 370 (1937) (considering application of tax on transfers of interest in silver bullion to transfers made before the adoption of the tax); *Nichols v. Coolidge*, 274 U.S. 531, 47 S. Ct. 710, 71 L. Ed. 1184 (1927) (considering imposition of an estate tax on transfers that predated imposition of tax); *Shell Oil Co. v. Bair*, 417 N.W.2d 425 (Iowa 1987) (considering application of statute disallowing a deduction to transaction occurring prior to adoption of statute, citing another tax statute case, *Welch v. Henry,* 305 U.S. 134, 59 S. Ct. 121, 83 L. Ed. 87 (1938), which considered statute imposing an income tax on corporate dividends that had been received prior to adoption of tax); *City Nat'l Bank of Clinton v. Iowa State Tax Comm'n,* 251 Iowa 603, 102 N.W.2d 381 (1960) (considering application of tax law to transaction that occurred prior to enactment of law, citing *Welch*, 305 U.S. 134, 59 S. Ct. 121, 83 L. Ed. 87). Therefore, these cases are distinguishable from the present case, just as *Carlton* is, because the purpose of the tax statute considered in these cases is not the same as the purpose of curative legislation, such as that at issue in the case before us.

requirements are satisfied "simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose." *Pension Benefit Guar. Corp.*, 467 U.S. at 729, 104 S. Ct. at 2718, 81 L. Ed. 2d at 611. Here, the legislature's purpose in ratifying cities' past imposition and collection of franchise fees in excess of their regulatory costs was protection of the cities' financial condition. The legislature wanted to ensure cities could retain the franchise fees/illegal taxes they had previously collected, thereby avoiding economic hardship to the cities, their taxpayers, and the public who rely on city services if the cities were required to refund these fees. Given that cities had used the fees they had already collected for public expenditures, the legislature acted to avoid a situation in which cities would have to refund monies they had already spent.

This purpose—to protect the financial stability of local municipalities—is entirely consistent with "the positive policy . . . served by curative legislation, to sustain the reliability of official actions and secure expectations formed in reliance thereon." *Singer on Statutory Construction* § 41:11, at 506; *see also id.* § 41:17, at 521 (noting curative legislation as to tax matters is necessary "in order to safeguard the public treasury against erosion of revenues"). As one court has noted in denying a refund to taxpayers who had paid unauthorized county fees, later validated by the legislature, "If there are 'settled expectations' in this case, they are the County's, not the taxpayers." *King v. Campbell County*, 217 S.W.3d 862, 870 (Ky. Ct. App. 2006), *review denied*, (Ky. 2007).

Having identified the purpose of this act—protection of the public fisc, we now must consider whether this purpose justifies the retroactive aspect of the legislation—ratification of past franchise fees. It is at this

juncture that the distinction between tax statutes and curative acts becomes most important. Unlike the revenue-raising tax statutes at issue in *Carlton* and like cases, which were designed to ensure tax collections remained at the same level or increased in the future, the curative act at issue here was designed to avoid the refund of monies *already collected and spent*. We agree with the district court that these purposes (maintaining revenue at the same or a higher level and avoiding refunds of past receipts) are fundamentally different. One need only put oneself in the position of the city to appreciate the distinction between the retroactivity of tax statutes versus the retroactivity of curative legislation. It is one thing to learn you will not be getting a raise as large as you anticipated and will have to adjust future expenditures accordingly (similar to allowing tax statutes limited retroactivity resulting in decreased *future* revenues); it is quite another matter to learn that you will have to return a portion of the income you have already received and spent (similar to the situation of denying retroactive authorization of taxes already collected and spent by the city). Clearly, the latter situation provides a more compelling justification for retroactivity than does the former.

Moreover, the fairness of retroactivity vis-à-vis the taxpayer is fundamentally different in these situations. In the context of retroactive tax legislation, the taxpayer has conducted himself in accordance with the laws in effect at the time of a particular transaction and then subsequently, due to the retroactivity of a new tax statute, is taxed on the past transaction. In contrast, when curative legislation is at issue, the taxpayer has entered into the transaction knowing the transaction is burdened with a particular fee or tax. Ratification of the tax or fee does not change the rules of the game after the taxpayer has placed his bet, as

is the case with retroactive tax legislation. *See* Charles B. Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv. L. Rev. 692, 704, 705–06 (1960) [hereinafter *The Constitutionality of Retroactive Legislation*] (noting "the interest in the retroactive curing of . . . a defect in the administration of government outweighs the individual's interest in benefiting from the defect"); *cf. Miller v. Johnson Controls, Inc.*, 296 S.W.3d 392, 401 (Ky. 2009) (allowing retroactive "clarification" of tax statute to conform to interpretation made by taxing authority, noting "the clear and lengthy notice, the lack of settled expectations and lack of detrimental reliance"), *cert. denied*, ___ U.S. ___ (2010).

The period of retroactivity justified by the purpose and effect of these clearly different statutes has been recognized by courts and scholarly authors alike. In a Kentucky case, the court noted the situation in *Carlton* was "significantly different" from the facts presented in the Kentucky case in which the taxpayers sought refunds of fees the municipality had already collected. *King*, 217 S.W.3d at 870 (concluding nineteen-year period of retroactivity did not violate taxpayers' due process rights). In his treatise, Singer also recognizes the singular nature of curative acts when he discusses the constitutionality of such legislation: "[T]he very reason for curative legislation is to fulfill and secure expectations rather than to frustrate and defeat them. *The principles governing decisions about the validity of retroactive legislation do not work to render curative acts invalid.*" *Singer on Statutory Construction* § 41:12, at 509 (emphasis added). Another author notes, "[c]ases involving the retroactive imposition of taxes must be treated separately" from curative statutes "which ratify prior official conduct of government officers who have acted without the requisite authority." *The*

*Constitutionality of Retroactive Legislation*, 73 Harv. L. Rev. at 704, 706. Thus, it is inaccurate to suggest curative statutes are subject to the same retroactivity concerns and limitations as tax statutes.

The justification for allowing curative acts to operate retroactively has been explained as follows:

> Non-substantive laws that operate retroactively help to rectify or prevent injustices that may have been caused by the previous law. For example, so-called "curative legislation" will be upheld when the legislation: (1) ratifies prior official conduct of government officials who acted without the requisite authority, or (2) retroactively cures defects in an administrative system. Retroactive curative rules are acceptable because of the strong public interest in a fair government system, and because they merely produce the same result that would have occurred had the lawmaker (usually an agency) promulgated the original rule correctly.

Jan G. Laitos, *Legislative Retroactivity*, 52 Wash. U. J. Urb. & Contemp. L. 81, 95 (1997) (footnotes omitted); *accord* Stephen R. Munzer, *A Theory of Retroactive Legislation*, 61 Tex. L. Rev. 425, 470 (1982) (suggesting retroactivity of curative legislation is justifiable because "[i]t tends to confirm expectations and to protect those who rely on the underlying merits of a claim rather than those who grasp at legal technicalities"); Laura Ricciardi & Michael B.W. Sinclair, *Retroactive Civil Legislation*, 27 U. Tol. L. Rev. 301, 338 (1996) ("Such curative legislation affirms as proper what everyone had taken to be the law anyway: it 'restores a situation that was affirmatively anticipated and provided for.' "). Thus, "[w]here legislation is curative, retroactive application may be constitutional despite a long period of retroactivity." *Wiggins v. Comm'r of Internal Revenue*, 904 F.2d 311, 316 (5th Cir. 1990).

The United States Supreme Court long ago recognized the very distinction we note. In *United States v. Heinszen*, 206 U.S. 370, 27 S. Ct. 742, 51 L. Ed. 1098 (1907), the Court reversed a judgment refunding

duties illegally collected on imports to the Philippine Islands under executive branch authority, relying on curative legislation passed by Congress. In 1898, the President imposed tariff duties on imports to the Philippine Islands. *Heinszen*, 206 U.S. at 378, 27 S. Ct. at 743, 51 L. Ed. at 1100. In 1899, a treaty of peace was ratified, which had the effect of taking away the President's power to impose these duties; yet the President continued the duties in force. *Id.* Three years later, in 1902, Congress expressly authorized the imposition of duties. *Id.* at 378, 27 S. Ct. at 743, 51 L. Ed. at 1100–01. In 1905, the Supreme Court heard two appeals from parties who had been denied refunds of duties paid between 1899 and 1902, before the duties were authorized. *Id.* at 380–82, 27 S. Ct. at 744–45, 51 L. Ed. at 1101–02. The Court reversed the judgments in favor of the government and held the President was without power to impose the duties after the treaty of peace was ratified in 1899. *Id.* Thereafter, in 1906, Congress passed an act legalizing and ratifying the collection of the unauthorized duties between 1899 and 1902. *Id.*

A year later the *Heinszen* appeal reached the Court. The district court in *Heinszen* had held duties paid by the claimants between 1899 and 1902 were illegal and had refused to give effect to the 1906 ratification of the unauthorized duties. *Id.* at 382, 27 S. Ct. at 745, 51 L. Ed. at 1102. The claimants asserted on appeal that application of the ratifying act would deprive them of their property without due process of law, arguing they had a vested right in the monies illegally exacted from them. *Id.* at 386, 27 S. Ct. at 746, 51 L. Ed. at 1104. The Supreme Court noted the general principle that Congress "had [the] power to ratify the acts which it might have authorized." *Id.* at 384, 27 S. Ct. at 745, 51 L. Ed. at 1103. Of particular significance to the present case is the Court's refusal to consider the legalizing act as a taxing statute:

> As to [the claim] the duties collected were illegal, it is insisted that, for the purpose of testing the validity of the act of Congress, the fact of such collection must be put out of view, and the act ratifying the exaction must be treated as if it were solely an original exercise by Congress of the taxing power. This being done, it is said, reduces the case to the inquiry, had Congress power, years after goods which were entitled to free entry had been brought into the Philippine Islands, to retroactively impose tariff duties upon the consummated act of bringing the goods into that country? But the proposition begs the question for decision, by shutting out from view the potential fact that when the goods were brought into the Philippine Islands there was a tariff in existence under which duties were exacted in the name of the United States. . . . *Moreover, the fallacy which the proposition involves becomes yet more obvious when it is observed that the contention cannot even be formulated without misstating the nature of the act of Congress; in other words, without treating that act as retrospective legislation enacting a tariff, when, on its very face, the act is but an exercise of the conceded power dependent upon the law of agency to ratify an act done on behalf of the United States, which the United States could have originally authorized.*

*Id.* at 385–86, 27 S. Ct. at 746, 51 L. Ed. at 1103–04. The Court went on to reject the claimants' due process claim, noting any right to a refund held by the claimants "was subject to the exercise by Congress of its undoubted power to ratify." *Id.* at 386, 27 S. Ct. at 746, 51 L. Ed. at 1104. The Court stated the fact that the instant suit was pending at the time Congress ratified the illegal duties did not "cause the statute to be repugnant to the Constitution," as "[t]he mere commencement of the suit did not change the nature of the right." *Id.* at 387, 27 S. Ct. at 747, 51 L. Ed. at 1104.

*Heinszen* was followed by the Court's 1937 decision in *Swayne & Hoyt, Ltd. v. United States*, 300 U.S. 297, 57 S. Ct. 478, 81 L. Ed. 659 (1937). In *Swayne & Hoyt*, steamship corporations challenged an order of the Secretary of Commerce canceling higher rates the corporations had been charging shippers through the Panama Canal. 300 U.S. at 299–300, 57 S. Ct. at 478–79, 81 L. Ed. at 661–62. The corporations

claimed, correctly, that the Secretary acted without authority, but the Court found Congress had subsequently validated the Secretary's action through various legislative acts. *Id.* at 300–01, 57 S. Ct. at 479–80, 81 L. Ed. at 662–63. As in *Heinszen*, the Court pointed out "a distinction must be taken 'between a bare attempt of the Legislature retroactively to create liabilities for transactions . . . fully consummated in the past . . . and the case of a curative statute aptly designed to remedy mistakes and defects in the administration of government where the remedy can be applied without injustice.' " *Id.* at 302, 57 S. Ct. at 480, 81 L. Ed. at 663 (quoting *Graham v. Goodcell*, 282 U.S. 409, 429, 51 S. Ct. 186, 194, 75 L. Ed. 415, 440 (1931)). The Court held "the retroactive application of the curative act impair[ed] no substantial right or equity of [the corporations]" and was not "unreasonable and arbitrary." *Id.* at 302, 57 S. Ct. at 480, 81 L. Ed. at 663–64.

A review of the *Van Emmerik* case cited above is also helpful because it relies on *Heinszen* and has facts strikingly similar to the case before us. *See Van Emmerik*, 304 N.W.2d at 701–05, 707. In *Van Emmerik*, the state of South Dakota had collected a four percent sales tax on the sale of utility services beginning in 1969, even though the tax statute applicable to utilities imposed only a three percent tax. *Id.* at 701–02. In 1979, a class action seeking refunds of the one percent illegal tax was brought against the utilities and the state on behalf of all South Dakota residents who had paid the excessive sales taxes on their utility bills. *Id.* at 701. Thereafter, in 1981, the South Dakota legislature enacted a law imposing a four percent tax on utilities and making it retroactive to 1969. *Id.* at 702. The class action petitioner challenged the constitutionality of this legislation, claiming it constituted "a taking

of property without just compensation in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments."[10] *Id.* at 703.

In addressing this claim, the South Dakota Supreme Court first noted that the act "purports to ratify the unauthorized collection by state officials of sales tax overcharges and to that extent, the law is a curative act." *Id.* It rejected the petitioner's argument that the utility customers had a right to a refund, stating:

> The unauthorized tax had been mistakenly collected without interruption since 1969 and petitioner presumably shared in whatever public benefits the tax funded. Where an asserted vested right that is not linked to any substantial equity arises from the mistake of officers purporting to administer the law in the name of the State, the Legislature is not prevented from curing the defect in administration simply because the effect may be to destroy claims that would otherwise exist. . . . Petitioner (having shared in the benefits

---

[10]At the time of this decision, the test of reasonableness for purposes of determining whether a taking had occurred was substantially the same as the test for a substantive due process claim. *See Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 541–42, 125 S. Ct. 2074, 2083, 161 L. Ed. 2d 876, 889–90 (2005) (discussing evolution of takings analysis, noting its "reliance on due process precedents"). This court has also equated the two tests. In *Home Builders*, this court considered a claim that an illegal tax in the form of a park dedication fee constituted a Fifth Amendment taking. *Home Builders Ass'n*, 644 N.W.2d at 351. We concluded it did not because "the fees were 'reasonably related to a substantial public purpose.'" *Id.* (quoting *Swisher Int'l, Inc. v. United States*, 178 F. Supp. 2d 1354, 1362 (Ct. Int'l Trade 2001), *aff'd, Arbon Steel & Serv. Co. v. United States*, 315 F.3d 1332 (Fed. Cir. 2003)). *See generally Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 127, 98 S. Ct. 2646, 2660, 57 L. Ed. 2d 631, 650 (noting "a use restriction on real property may constitute a 'taking' if not reasonably necessary to the effectuation of a substantial public purpose"), *reh'g denied*, 439 U.S. 883, 99 S. Ct. 226, 58 L. Ed. 2d 198 (1978), *modification recognized by Palm Beach Isles Assocs. v. United States*, 231 F.3d 1354 (Fed. Cir. 2000). In considering the plaintiff's substantive due process claim, we noted there must merely be "'a "reasonable fit" between governmental purpose . . . and the means chosen to advance that purpose.'" *Home Builders Ass'n*, 644 N.W.2d at 353 (quoting *ACCO Unlimited Corp. v. City of Johnston*, 611 N.W.2d 506, 510 (Iowa 2000)). We concluded this test was met, stating, "[w]e have already determined in connection with our takings analysis that the parks fee is reasonably related to the City's goal of establishing neighborhood parks. This conclusion also disposes of the plaintiff's substantive due process claim." *Id.* at 354. Thus, even though *Van Emmerik* involved a takings claim, the court applied substantially the same test we must employ in the present case for substantive due process.

> funded by the tax) effectively seeks a windfall in claiming that a vested right has arisen here since, had the official action in question had the effect it was intended to and could have had, no such right would have arisen.

*Id.* at 705; *cf. Johnson Controls,* 296 S.W.3d at 397 (holding taxpayers had no "vested right in the Kentucky Revenue Code"). The court also held the petitioner's claim that the law "is invalid due to its eleven and one-half year period of retroactivity . . . lack[ed] merit." *Van Emmerik,* 304 N.W.2d at 706. The court noted the temporal element of retroactivity is relevant to the fairness of applying the legislation retroactively. *Id.* ("The obvious reason for this concern is rooted in the principle that a person should be able to plan his conduct with reasonable certainty of the legal consequences."). Although this consideration is "[a]n important element" in cases involving "retroactive taxation," the court noted, this principle of fairness was "not threatened here." *Id.* Accordingly, the court gave full effect to the legislature's ratification of eleven and one-half years of unauthorized taxation. *Id.* The petitioner's subsequent appeal to the United States Supreme Court was dismissed "for want of a substantial federal question." *Van Emmerik v. Janklow,* 454 U.S. 1131, 102 S. Ct. 986, 71 L. Ed. 2d 285 (1982).

A more recent decision of the United States Court of Appeals for the District of Columbia Circuit is also factually on point. *See Thomas v. Network Solutions, Inc.,* 176 F.3d 500 (D.C. Cir. 1999), *cert. denied,* 528 U.S. 1115 (2000). In this case, the National Science Foundation (NFS), an agency of the federal government, contracted with Network Solutions, Inc., a private corporation, to provide domain registration services for the Internet. *Id.* at 504. Pursuant to the contract, Network Solutions charged domain name registrants a yearly registration fee, with seventy percent of the fees kept by Network Solutions and the remaining thirty

percent deposited in an account on NFS's behalf "for preserving and enhancing the 'Intellectual Infrastructure of the Internet.'" *Id.* at 505. Plaintiffs, registrants who paid the annual registration fees, brought suit, seeking refunds of the so-called preservation assessment. *Id.* The district court held the preservation assessment "was an above-cost tax Congress had not authorized and hence was unconstitutional." *Id.* Congress immediately enacted a law that "legalized and ratified" the preservation assessment that had been illegally collected for over two years. *Id.* The district court then dismissed the plaintiffs' claims as moot. *Id.* at 506.

On appeal, the court of appeals considered the effect of Congressional ratification of the illegal tax. *Id.* Quoting *Heinszen*, it noted "that Congress 'has the power to ratify the acts which it might have authorized' in the first place, so long as the ratification 'does not interfere with intervening rights.'" *Id.* (quoting *Heinszen*, 206 U.S. at 384, 27 S. Ct. at 745–46, 51 L. Ed. at 1103). The court affirmed the district court's denial of the plaintiffs' claim. *Id.* at 512.

An analogous case involving an act characterized as clarifying prior law is also enlightening. In *Robert Morris College v. United States*, 11 Cl. Ct. 546, 547 (Cl. Ct. 1987), a taxpayer sought a refund of FICA taxes paid for the years 1979–1983. These taxes were calculated pursuant to a 1965 revenue ruling issued by the Department of Treasury interpreting the governing statute. *Robert Morris Coll.*, 11 Cl. Ct. at 547. The taxpayer claimed the Department's interpretation was inconsistent with a decision of the United States Supreme Court, *Rowan Cos. v. United States*, 452 U.S. 247, 101 S. Ct. 2288, 68 L. Ed. 2d 814 (1981), and therefore, it was entitled to a refund of the erroneously paid taxes. *Id.* at 547–48. In 1983, Congress, concerned about the impact of *Rowan* on

taxes already collected, passed a law that in effect amended the governing statute to make it consistent with the revenue ruling. *Id.* at 549, 551. In 1984, Congress made the 1983 statute effective for years prior to 1983 "to preclude the possibility of refunds of FICA taxes paid in conformity with [the revenue ruling]." *Id.* at 551.

The taxpayer challenged the retroactive application of the new law, claiming it deprived the taxpayer "of its right to recover an overpayment." *Id.* at 553. The taxpayer also claimed "that since the 1984 Act covers retroactively such a long period of time, it violates due process." *Id.* The court rejected this claim, stating:

> Plaintiff was not deprived of any amounts to which it was entitled, nor did the legislation change its status by requiring plaintiff to pay additional amounts. Instead, Congress in pursuit of rational purposes—protection of the Social Security base and prevention of the potential disruption *Rowan* could cause—codified a revenue ruling which had been in force during the period in question. Plaintiff complied with [this revenue ruling] throughout, and it should not be considered arbitrary or unfair that it cannot reclaim amounts paid to Social Security which it never expected to be refunded.

*Id.* at 553–54; *accord Canisius Coll. v. United States*, 799 F.2d 18, 26–27 (2d Cir. 1986), *cert. denied*, 481 U.S. 1014 (1987); *Temple Univ. v. United States*, 769 F.2d 126, 135 (3d Cir. 1985), *cert. denied*, 476 U.S. 1182 (1986); *Johnson Controls*, 296 S.W.3d at 401.

A final case that is factually similar, and therefore helpful, is the Kentucky Court of Appeals' *King* decision previously mentioned. In *King*, two counties had for many years imposed a "fee" on individual incomes and business net profits without giving those paying the fees a credit for similar city fees paid by the taxpayers. 217 S.W.3d at 865–66. In 2001, taxpayers challenged the county fees, and the Kentucky Supreme Court held in 2004 that the counties should have been giving the taxpayers a

credit for city fees the taxpayers had paid. *Id.* Based on this decision, the taxpayers filed an action on their own behalf and on behalf of all other persons who had paid the county fees seeking refunds of the excessive fees charged by the counties since 1986. *Id.* In response to the same decision, the legislature enacted a law providing that no taxpayer was entitled to a refund for any overpayment and making the statute retroactive. *Id.* at 866–67. The district court ruled the statute was not unconstitutional and dismissed the taxpayers' suit for refunds. *Id.* at 865.

On appeal, the appellate court held the statute precluding refunds of all excessive fees did not violate due process notwithstanding its long period of retroactivity, noting the legislature had enacted this provision "to shield [the counties] from what it believed could be the devastating [financial] consequences of the Supreme Court's decision." *Id.* at 870 (distinguishing *Carlton* as dealing with a situation "significantly different"). The court noted, "If there are 'settled expectations' in this case, they are the County's, not the taxpayers." *Id.*; *see also Jasinski v. City of Miami*, 269 F. Supp. 2d 1341, 1347 (S.D. Fla. 2003) ("When a legislative body, in good faith, enacts a curative law to ratify, validate and confirm any act that it could have authorized in the first place, . . . it would contravene public policy to award plaintiffs a windfall for asserting a cause of action that the legislative body may constitutionally eliminate by curing any defects in the law."), *aff'd*, 99 Fed. App'x 887 (11th Cir. 2004); *Johnson Controls*, 296 S.W.3d at 401 (upholding retroactive "clarifying" legislation denying taxpayer refunds, noting taxpayers' "lack of settled expectations and lack of detrimental reliance").

The plaintiff claims the cases we have discussed are not good law in light of the United States Supreme Court's decision in *McKesson Corp.*

*v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 110 S. Ct. 2238, 110 L. Ed. 2d 17 (1990). In *McKesson*, the Florida Supreme Court had ruled that a Florida "tax scheme unconstitutionally discriminated against interstate commerce," but the court had refused to provide the taxpayer a refund for taxes it had already paid. 497 U.S. at 22, 110 S. Ct. at 2242, 110 L. Ed. 2d at 26. On certiorari to the United States Supreme Court, the Court held "the Due Process Clause requires the State to afford taxpayers a meaningful opportunity to secure postpayment relief for taxes already paid pursuant to a tax scheme ultimately found unconstitutional." *Id.* at 22, 110 S. Ct. at 2242, 110 L. Ed. 2d at 26–27.

Clearly, *McKesson* addressed the taxpayer's *procedural* due process rights; it did not consider the validity of curative legislation under the doctrine of substantive due process. Moreover, the tax at issue in *McKesson* was one that was inherently unconstitutional or illegal, one that the state had no power to authorize under any circumstances. As we have already noted, the tax at issue here was not one that was inherently unconstitutional; it had simply not been authorized by the legislature at the time it was assessed and paid. *McKesson* plainly does not stand for the proposition that principles of substantive due process are violated by the enactment of a curative statute that retroactively ratifies a taxing authority's imposition of an otherwise permissible tax. *See Atchison, Topeka & Santa Fe Ry. v. United States*, 61 Fed. Cl. 501, 508 (Fed. Cl. 2004) (rejecting due process challenge to retroactivity of statute, distinguishing *McKesson* from cases involving curative legislation); *Johnson Controls*, 296 S.W.3d at 402–03 (rejecting applicability of *McKesson* to due process challenge to legislature's retroactive confirmation of state taxing authority's interpretation of tax

statute). Therefore, *McKesson* does not undermine the validity of the cases upon which we rely.

In summary, then, the cases and legal authorities addressing the retroactive application of curative legislation establish: (1) ratification of a tax already imposed and collected cannot be equated with the retroactive imposition of a new tax for purposes of determining the constitutionality of retroactive application of a curative act, (2) curative acts do not impair any vested right of the taxpayer,[11] (3) there is no litmus test for a reasonable period of retroactivity for curative acts, and (4) ratification of a tax collected without authority is given full retroactivity so long as the retroactivity furthers a legitimate purpose.

The legislative purpose behind the curative act in this case was clearly to allocate the burdens of government and to avoid financial disruption to the finances of the cities involved. Importantly, this situation in not one in which taxpayers have reasonably relied upon tax

---

[11]We note that Iowa law regarding the impairment of vested rights is consistent with the authorities we have discussed. In fact, the precise argument plaintiff makes here—that he has a vested right to a refund—was made and rejected in our early *Soper* case. 39 Iowa at 117–18. In that case, the plaintiff argued "that before the passage of the curative act, the plaintiff had a right of action to recover back the illegal taxes paid, and that this is a vested right." *Id.* at 121. We rejected the plaintiff's argument there and have continued to hold in subsequent cases that curative legislation ratifying an invalid exercise of governmental power, including previously imposed taxes, does not interfere with vested rights. *Id.* at 124; *see Schwarzkopf*, 341 N.W.2d at 8; *Iowa Elec. Light & Power Co. v. Inc. Town of Grand Junction*, 221 Iowa 441, 452–53, 264 N.W. 84, 90 (1935); *Rosenbaum*, 212 Iowa at 232–34, 231 N.W. at 648–49; *Chicago, R.I. & P. Ry. v. Streepy*, 211 Iowa 1334, 1338, 236 N.W. 24, 26 (1931); *Indep. Dist. of Avoca*, 99 Iowa at 561–62, 68 N.W. at 882; *Boardman*, 18 Iowa at 294–95.

The plaintiff places great reliance on our decision in *Thorp v. Casey's General Stores, Inc.*, 446 N.W.2d 457 (Iowa 1989), in which this court held the retroactive application of an amendment to Iowa's dramshop law that eliminated a plaintiff's accrued tort claim deprived her of a vested right in violation of due process. *Thorp*, 446 N.W.2d at 462. We specifically noted in our decision, however, that a similar conclusion does not prevail when the retroactive legislation is a curative act. *Id.* Such statutes, we stated, survive constitutional scrutiny even if they deprive a plaintiff of a vested cause of action. *Id.*

law and structured their affairs in a fashion that is prejudiced by the retroactive legislation. The fee payers in this case paid unauthorized franchise fees that were later ratified by the state. If the taxpayers in these municipalities had known that ratification would be forthcoming, they would not have altered their conduct in any material way.

Certainly the legislature could have refused to ratify the acts of the cities, requiring the burden of tax refunds resulting from the unlawfully collected taxes to be borne by current city taxpayers, either in the form of increased taxes or reduced services. Instead, however, the legislature decided to avoid these disruptions by retroactively ratifying the taxes already paid.[12] One may, of course, question the wisdom of these ratifying decisions on the ground that cities should be left to their own devices after pushing the tax envelope too far. The issue of the degree to which municipalities must be held on a short leash through a refusal to ratify unauthorized tax collections is generally a political question for the legislature to decide. In this case, the legislature's determination that the interest in stable municipal finances trumps the need to discipline city management does not amount to an arbitrary or irrational choice under the facts and circumstances.

### IX.  Period of Retroactivity.

As a backup argument, the plaintiff contends that, if we hold the legislature had the power to retroactively authorize the illegal taxes imposed by cities on cable television services, the retroactive application

---

[12]Notably, no taxpayer has been arbitrarily or irrationally singled out for special treatment. *See Commonwealth Edison Co. v. Will County Collector*, 749 N.E.2d 964, 975 (Ill. 2001) (upholding legislative act validating taxes predating effective date of legislation, noting the general assembly was not targeting any particular group of taxpayers "for retribution or other illegitimate purpose"); *cf. Carlton*, 512 U.S. at 32, 114 S. Ct. at 2023, 129 L. Ed. 2d at 29 (concluding retroactive amendment to tax statute did not violate due process, in part, because "Congress' purpose in enacting the amendment was neither illegitimate or arbitrary").

of this authorization should be limited to "one year or the adjournment of the previous legislative session, May 3, 2006." He claims courts applying *Carlton* use a "bright line one year rule as the constitutionally permissible period of retroactivity for state tax legislation." The plaintiff's suggestion that a one-year retroactive period approaches the due process limit is based on dicta in Justice O'Connor's concurring opinion in *Carlton*. *See Carlton*, 512 U.S. at 38, 114 S. Ct. at 2026, 129 L. Ed. 2d at 33 ("A period of retroactivity longer than the year preceding the legislative session in which the law was enacted would raise, in my view, serious constitutional questions.") (O'Connor, J., concurring).

In our view, however, Justice O'Connor's comments were not meant to amount to a per se rule in all cases of every variety involving taxes. Moreover, a majority of the Supreme Court in *Carlton* did not embrace a one-year rule, but instead provided a more flexible framework for deciding the due process question. *See Montana Rail Link, Inc.*, 873 F. Supp. at 1421 (rejecting plaintiff's argument that all retroactive legislation must have a "short and limited period" of retroactivity, stating "in *Carlton* the Court did not establish a specific time frame for the validity of retroactive legislation"); *Enter. Leasing Co. of Phoenix v. Ariz. Dep't of Revenue*, 211 P.3d 1, 5–6 (Ariz. Ct. App. 2008) (rejecting interpretation of *Carlton* as standing for proposition that "retroactivity in excess of one year . . . creates a due process issue" and holding six-year period of retroactivity did not violate due process), *review denied,* (Ariz. 2009); *Johnson Controls*, 296 S.W.3d at 399 (rejecting "a specified modesty period," noting eight of the nine justices in *Carlton* did not subscribe to a one–year limit on retroactivity); *see also Canisius Coll.*, 799 F.2d at 26–27 (rejecting "a one-year bench mark as the constitutional limit of retroactivity," and holding four–year retroactive

application *of curative statute* was not violative of due process); *cf. Licari v. Comm'r of Internal Revenue*, 946 F.2d 690, 695 (9th Cir. 1991) (rejecting due process challenge to statute retroactively increasing tax penalty, noting a four-year period of retroactivity was not, by itself, sufficient to violate due process), *aff'd*, 946 F.2d 898 (9th Cir. 1991); *Temple Univ.*, 769 F.2d at 135 (in case involving clarifying legislation applied retroactively to plaintiff's tax returns going back six years, court stated, "no federal court of appeals has yet adopted an absolute temporal limitation on retroactivity," citing case allowing a nine-year period of retroactivity).  Moreover, to the extent *Carlton* stands for the proposition that *tax statutes* must have a certain period of retroactivity, that proposition is inapplicable here because the legislation authorizing the city's franchise fees is a *curative act.*

It is, of course, possible under the Iowa due process clause to adopt a different approach from the federal model.  Our recent cases emphasize that we jealously protect our right to engage in independent analysis of state constitutional claims, both with respect to the standards to be utilized and the application of those standards to the facts and circumstances of a given case.  *See, e.g., State v. Bruegger*, 773 N.W.2d 862, 883 (Iowa 2009); *Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 6–7 (Iowa 2004).  Here, however, the plaintiff does not propose a wholesale abandonment of established federal doctrine under the Iowa Constitution, but instead implies that the dicta in Justice O'Connor's concurring opinion in *Carlton* should provide the basis for a decision in his favor under the Iowa Constitution.  This dicta does not present a basis for decision under the Iowa Constitution in light of the nature of the dispute presented here and the lack of detrimental reliance by the taxpayers.  While there are Iowa cases that suggest a short period of

retroactivity for tax legislation, these cases do not involve ratification of prior acts of municipalities by the state. *See, e.g., Shell Oil Co. v. Bair*, 417 N.W.2d 425, 431–32 (Iowa 1987); *City Nat'l Bank of Clinton v. Iowa State Tax Comm'n*, 251 Iowa 603, 608–09, 102 N.W.2d 381, 384 (1960).

Having rejected a rigid limit on the allowable period of retroactivity for curative legislation, we will consider the plaintiff's argument that only a modest period of retroactivity can satisfy due process using the substantive due process principles outlined above. As we have discussed, the purpose of the 2007 act passed by the Iowa legislature was to safeguard the financial stability of municipalities by ensuring they would not be required to refund substantial sums that they had already collected—and spent. Clearly, the validation of past collections was a reasonable fit with this legislative purpose. The plaintiff has not demonstrated why this purpose—to safeguard the public fisc—is advanced by allowing the city to retain the past one or two years of taxes, but not the past five and one-half years of taxes. *See The Constitutionality of Retroactive Legislation*, 73 Harv. L. Rev. at 704 ("[W]hen dealing with curative statutes, the Court has consistently held that the legislative purpose is of itself sufficient to justify the concomitant retroactivity."); *cf. Rocanova v. United States*, 955 F. Supp. 27, 30 (S.D.N.Y. 1996) (holding six-year period of retroactivity for lengthened statute of limitations governing government claims for back taxes did not violate due process as "[t]he very purpose of the Amendment required its application to all existing tax liabilities"), *aff'd*, 109 F.3d 127 (2d Cir.), *cert. denied*, 522 U.S. 821 (1997); *Johnson Controls*, 296 S.W.3d at 401 (rejecting due process challenge to 2000 statute that gave effect to taxing authority's interpretation of tax statute from 1988 to 1994, an interpretation that was held erroneous by the Kentucky Supreme Court

in 1994). *See generally Waters*, 251 N.W.2d at 548 (stating a curative act " 'is necessarily retrospective in character' " (quoting *McSurely v. McGrew*, 140 Iowa 163, 172, 118 N.W. 415, 419 (1908))). Therefore, the plaintiff has not carried his burden to establish the unconstitutionality of the legislature's action.

### X.  Summary and Disposition.

We recognize the result in this case makes litigation challenging municipal taxes that have not been authorized by the state less attractive as recovery of potential refunds may be cut off by the legislature. Yet, any municipality that imposes unauthorized taxes runs the risk of fiscal disruption in the event the legislature declines to ratify its actions.[13] If the legislature wishes to provide taxpayers with a mandatory recovery when unauthorized taxes are levied by local governments, it may do so through appropriate legislation. As even the *Carlton* Court stated with respect to the retroactive imposition of a new tax:

> "Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by a rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches. . . ."

*Carlton,* 512 U.S. at 30–31, 114 S. Ct. at 2022, 129 L. Ed. 2d at 28 (quoting *Pension Benefit Guar. Corp.*, 467 U.S. at 729, 104 S. Ct. at 2718, 81 L. Ed. 2d at 611); *accord Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 19, 96 S. Ct. 2882, 2894, 49 L. Ed. 2d 752, 768–69 (1976) (noting wisdom of retroactive application of statute imposing liability on coal mine operators for disabilities of former employees was "not a question of

---

[13]We note the fees determined to constitute illegal taxes in *Kragnes* were imposed on gas and utility services. The legislation at issue here does not ratify such fees, and in fact, the plaintiff in this case has a pending claim for refund of gas and utility fees.

constitutional dimension," and holding retroactivity was not a due process violation).  This court made a similar observation in *State v. Miner*, 331 N.W.2d 683 (Iowa 1983), in considering a substantive due process challenge to economic regulation: "Our function is not that of a super-legislature which weighs the wisdom of legislation; we look only to whether the means chosen by the State are rational and reasonably necessary to the accomplishment of the State's purpose."  331 N.W.2d at 689 (citation omitted).  For the present, our legislature has reserved to itself the power to determine whether to ratify unauthorized local taxes on a case-by-case basis.  We must defer to a constitutional exercise of that judgment.

In summary, the legislature's ratification of the city's unauthorized tax is a curative statute whose purpose—to safeguard the public fisc and the financial stability of local municipalities—is rationally related to its retroactivity.  Therefore, this statute does not violate the plaintiff's substantive due process rights.  We affirm the district court's summary judgment for the city on the plaintiff's claim for a refund of fees paid on cable television services.  We remand this case for further proceedings on the plaintiff's claim for a refund of gas and utility fees.

**AFFIRMED AND CASE REMANDED.**

All justices concur except Wiggins and Hecht, JJ., who dissent.

**WIGGINS, Justice (dissenting).**

The facts of this case illustrate why many ordinary citizens distrust their elected officials. In 2002 this court's decision in *Home Builders Ass'n of Greater Des Moines,* established the proposition that any fees a city collects is an illegal tax when it charges franchise fees not reasonably related to the reasonable costs of inspecting, licensing, supervising, or otherwise regulating a franchised activity. *Home Builders Ass'n of Greater Des Moines v. City of W. Des Moines,* 644 N.W.2d 339, 347–48 (Iowa 2002).

On May 2, 2005, the elected officials of the City of Dubuque enacted a cable franchise fee. Dubuque Mun. Code ch. 11, § 3A-7(1). Under existing Iowa law, the city should have known that such a fee is an illegal tax to the extent it exceeds the reasonable administrative costs of regulating the cable provider. The fee as enacted was due not to the city, but to cable providers who would disconnect a subscriber's cable service if he or she refused to pay the illegal tax. Once the citizens of Dubuque realized the franchise fee was nothing more than an illegal tax, they brought this action to seek a refund.

On May 26, 2006, this court issued the *Kragnes* decision. *Kragnes v. City of Des Moines,* 714 N.W.2d 632 (Iowa 2006). In *Kragnes,* this court held the citizens of a municipality could bring an action against the municipality for a refund of that part of a franchise fee paid by the citizens that exceeded the reasonable administrative costs related to gas and electric utility franchises. *Id.* at 643–44. In response to *Kragnes,* the 82nd General Assembly passed a law authorizing franchise fees in excess of a city's administrative costs and giving municipalities the right to retain the revenues it collected from the illegal tax. Iowa Code

§ 477A.7(5) (Supp. 2007). This law became effective May 29, 2007. 2007 Iowa Acts ch. 201, § 15.

I assume that in 2005, when the Dubuque City Council passed its franchise fee, the 81st General Assembly had neither the votes nor the political will to authorize the city to collect franchise fees on cable services in excess of the reasonable costs of inspecting, licensing, supervising, or otherwise regulating such services. Subsequently, the 82nd General Assembly, a legislative body not elected by the people at the time the Dubuque City Council levied and collected the illegal tax, decided the city could retain the revenues generated by the tax. The actions of the 82nd General Assembly, authorizing the collection of the illegal tax retrospectively, compounded the unfairness of the actions of the Dubuque City Council when it enacted the tax without legislative authority. Such conduct by these elected officials completely disregarded the political will of the general assembly at the time the Dubuque City Council imposed the franchise fee on cable services. These actions are as repugnant to the American system of taxation as the concept of taxation without representation.

The majority decision holds, a curative statute may, consistent with due process principles, authorize the unfettered retroactive application of an illegal tax so long as the purpose of the curative statute is to protect the public fisc. Of course, any time a city must pay out funds the public fisc is at risk. Thus, under the majority's decision, a curative statute authorizing the imposition and retention of an illegal tax can never be subject to a due process challenge.

Taking the holding of the majority to its logical conclusion leads to the result that any act a legislative body had the power to enact, but did not authorize by formal legislative enactment, could be the subject of a

curative act and evade the requirements of the Due Process Clauses of the United States and Iowa Constitutions. This reasoning is illogical, and its flaw is illustrated by the following example.

The general assembly has the power to enact a fee on hunters. However, such a fee is nothing more than an illegal tax until a bill enacting such a fee is introduced in the general assembly, passed by a constitutional majority of the house and senate, and signed by the governor. Suppose the department of natural resources decides the state's financial situation requires more revenues and on its own, enacts a rule to collect an additional ten percent fee on hunting licenses without the authorization of a law enacting such an increase. Because the legislature has not authorized this fee, it is an illegal tax. Under the logic of the majority, the department may collect and retain this tax without legislative authority so long as a subsequent general assembly enacts a curative act allowing the state to retain the illegal tax it previously collected.

Moreover, a retroactive tax is a new tax whether the legislature enacts it as a curative statute or by other legislation. The effect is the same, the legislature is authorizing a governmental entity to collect and retain the revenues of a tax that the entity previously was not authorized to collect. The manner in which the legislature enacts a retroactive tax is a distinction without a difference.

This does not mean, however, retroactive taxes necessarily violate the Due Process Clauses of the Federal or State Constitutions. *See, e.g.*, *United States v. Carlton*, 512 U.S. 26, 35, 114 S. Ct. 2018, 2024, 129 L. Ed. 2d 22, 31 (1994) (applying federal due process); *United States v. Hemme*, 476 U.S. 558, 571, 106 S. Ct. 2071, 2079, 90 L. Ed. 2d 538, 550 (1986) (same); *United States v. Darusmont,* 449 U.S. 292, 297–99,

101 S. Ct. 549, 552–53, 66 L. Ed. 2d 513, 517–19 (1981) (same); *Welch v. Henry*, 305 U.S. 134, 149–51, 59 S. Ct. 121, 126–27, 83 L. Ed. 87, 94–95 (1938) (same); *United States v. Hudson*, 299 U.S. 498, 500–01, 57 S. Ct. 309, 310, 81 L. Ed. 370, 372 (1937) (same); *Shell Oil Co. v. Bair*, 417 N.W.2d 425, 431–32 (Iowa 1987) (same); *City Nat'l Bank of Clinton v. Iowa State Tax Comm'n*, 251 Iowa 603, 608–09, 102 N.W.2d 381, 384 (1960) (applying state and federal due process principles).

The most recent Supreme Court decision to address the retroactivity of a tax is *Carlton*. In *Carlton*, a taxpayer relied on the Tax Reform Act of 1986 to exclude from federal estate taxation one-half of the proceeds from the sale of securities to an Employee Stock Ownership Plan. *Carlton*, 512 U.S. at 28, 114 S. Ct. at 2020–21, 129 L. Ed. 2d at 26–27. In January 1987, after the taxpayer made the sale, the Internal Revenue Service (IRS) issued a notice stating it would not recognize such a deduction unless the decedent directly owned the stock immediately prior to his or her death. *Id.* at 29, 114 S. Ct. at 2021, 129 L. Ed. 2d at 27. In December 1987 Congress enacted a statute codifying the substance of the IRS notice. *Id.* The IRS then disallowed the deduction because the decedent did not own the stock immediately before her death. *Id.* The taxpayer paid the deficiency, filed a claim for a refund, and instituted a suit for refund arguing the government's retroactive use of the December 1987 law to deny a deduction available to the taxpayer when the taxpayer made the sale violated the Due Process Clause of the Fifth Amendment to the United States Constitution. *Id.*

Prior to *Carlton*, the Supreme Court determined the validity of a retroactive tax statute under the Due Process Clause by determining whether its " 'retroactive application is so harsh and oppressive as to transgress the constitutional limitation.' " *Id.* at 30, 114 S. Ct. at 2022,

129 L. Ed. 2d at 28 (quoting *Welch*, 305 U.S. at 147, 59 S. Ct. at 126, 83 L. Ed. at 93). In applying the harsh and oppressive test, the Ninth Circuit in *Carlton*, considered two factors. *Carlton v. United States*, 972 F.2d 1051, 1059 (9th Cir. 1992), *rev'd*, 512 U.S. 26 (1994). These factors are "[f]irst, did the taxpayer have actual or constructive notice that the tax statute would be retroactively amended? Second, did the taxpayer rely to his detriment on the pre-amendment tax statute, and was such reliance reasonable?" *Id.* A third factor used by courts prior to the Supreme Court's decision in *Carlton* in determining whether a retroactive application of a tax meets due process requirements was whether Congress acted promptly and established a modest period of retroactivity. *Darusmont*, 449 U.S. at 296–97, 101 S. Ct. at 551–52, 66 L. Ed. 2d at 517.

After applying the factors of the harsh and oppressive test, the Ninth Circuit found the retroactive application of the tax unconstitutional. *Carlton*, 972 F.2d at 1062. In reversing the Ninth Circuit, the Supreme Court abandoned the factors of reliance and notice previously used by the Court in applying the harsh and oppressive test. *Carlton*, 512 U.S. at 30–34, 114 S. Ct. at 2022–24, 129 L. Ed. 2d at 28–31. In place of the factors the Supreme Court previously applied under the harsh and oppressive test, the Court held, when dealing with economic policy, the harsh and oppressive test should not differ from the prohibition against arbitrary and irrational legislation. *Id.* at 30, 114 S. Ct. at 2022, 129 L. Ed. 2d at 28. Thus, the Court held as long as a retroactive tax is supported by a legitimate legislative purpose furthered by rational means, the retroactive application will not violate the Federal Due Process Clause. *Id.* at 30–31, 114 S. Ct. at 2022, 129 L. Ed. 2d at 28.

In *Carlton*, when deciding whether the retroactive application of a tax is supported by a legitimate legislative purpose furthered by rational means, the Supreme Court considered two factors. First, the Supreme Court determined whether the legislative body's purpose in enacting the retroactive application of the statute was illegitimate or arbitrary. *Id.* at 32, 114 S. Ct. at 2023, 129 L. Ed. 2d at 29. It is sufficient "if there exists *some* legitimate purpose underlying the retroactivity provision." *Id.* at 37, 114 S. Ct. at 2025, 129 L. Ed. 2d at 32 (O'Connor, J., concurring). The Supreme Court concluded the retroactive application of the tax was neither illegitimate nor arbitrary. *Id.* at 32, 114 S. Ct. at 2023, 129 L. Ed. 2d at 29. The Court determined Congress had a legitimate purpose in correcting a mistake it made when it enacted the Tax Reform Act of 1986. *Id.* A failure to rectify the mistake would lead to billions of dollars in lost revenue for the government, and innocent taxpayers would have to help replenish the federal coffers if the mistake was not rectified retroactively. *Id.* at 31–32, 114 S. Ct. at 2022–23, 129 L. Ed. 2d at 29.

Second, the Supreme Court determined whether the legislature "acted promptly and established only a modest period of retroactivity." *Id.* at 32, 114 S. Ct. at 2023, 129 L. Ed. 2d at 29. If the legislature acted promptly and established only a modest period of retroactivity, the statute would comport with due process. *Id.* The Supreme Court determined the retroactivity of the tax in question extended for a modest period of slightly greater than one year. *Id.* at 33, 114 S. Ct. at 2023, 129 L. Ed. 2d at 30. Therefore, the Supreme Court upheld the retroactive application of the tax against a due process challenge. *Id.* at 35, 114 S. Ct. at 2024, 129 L. Ed. 2d at 31.

Following the *Carlton* decision, legal scholars agreed that, in order for the retroactive application of a tax to pass constitutional muster

under the Due Process Clause, a legislative body's purpose in enacting the retroactive application of a tax statute can be neither illegitimate nor arbitrary, and the statute must possess a modest period of retroactivity. *See, e.g.,* Charles H. Koch, Jr., 3 Administrative Law & Practice § 12.34[11] (2d ed. 1997); Pat Castellano, *Retroactively Taxing Done Deals: Are There Limits?*, 43 U. Kan. L. Rev. 417, 438 (1995); Lynn A. Gandhi, *Taxation*, 53 Wayne L. Rev. 599, 607 n.70 (2007); Robert R. Gunning, *Back From the Dead: The Resurgence of Due Process Challenges to Retroactive Tax Legislation*, 47 Duq. L. Rev. 291, 293–94 (2009); Leo P. Martinez, *Of Fairness and Might: The Limits of Sovereign Power to Tax After* Winstar, 28 Ariz. St. L.J. 1193, 1208–09 (1996); Kaiponanea T. Matsumura, *Reaching Backward While Looking Forward: The Retroactive Effect of California's Domestic Partner Rights and Responsibilities Act*, 54 UCLA L. Rev. 185, 203 (2006); Michael J. Phillips, *The Slow Return of Economic Substantive Due Process*, 49 Syracuse L. Rev. 917, 964 n.306 (1999); Monica Risam, *Retroactive Reinstatement of Top Federal Estate Tax Rates Is Constitutional:* Kane v. United States, 51 Tax Law. 481, 485 (1998).

Other courts have passed on the constitutionality of a retroactive tax statute since the Supreme Court's decision in *Carlton.* These courts have applied the two-part *Carlton* test. *See, e.g., Quarty v. United States*, 170 F.3d 961, 965–68 (9th Cir. 1999) (upholding a retroactive tax by finding an eight-month period of retroactivity to be a modest period of retroactivity); *Kitt v. United States*, 277 F.3d 1330, 1334–35 (Fed. Cir. 2002) (upholding a retroactive tax by finding a seven-month period of retroactivity to be a modest period of retroactivity); *Kane v. United States*, 942 F. Supp. 233, 234 (E.D. Pa. 1996) (upholding a retroactive tax by finding an eight-month period of retroactivity to be a modest period of

retroactivity); *Enter. Leasing Co. of Phoenix v. Ariz. Dep't of Revenue*, 211 P.3d 1, 5–7 (Ariz. Ct. App. 2008) (upholding a retroactive tax by finding a one-month period of retroactivity to be a modest period of retroactivity); *Gardens at W. Maui Vacation Club v. County of Maui*, 978 P.2d 772, 782–83 (Haw. 1999) (upholding a retroactive tax by finding a six-month period of retroactivity to be a modest period of retroactivity); *Rivers v. State*, 490 S.E.2d 261, 264–65 (S.C. 1997) (holding a retroactive tax of at least two to three years is not a modest period of retroactivity; therefore, the statute's retroactivity violates state and federal due process).

Prior to the Supreme Court's decision in *Carlton,* this court had two occasions to look at the retroactivity of a tax statute. The first was *City National Bank of Clinton.* There, a taxpayer asked this court to determine the constitutionality of the retroactive application of a tax law regarding capital gains. *City Nat'l Bank of Clinton*, 251 Iowa at 605, 102 N.W.2d at 382. The taxpayer claimed the retroactive application of the statute violated the Due Process Clauses of both the United States and Iowa Constitutions. *Id.* at 607, 102 N.W.2d at 383. In deciding otherwise, this court applied a two-factor test under both Constitutions. *Id.* at 608–09, 102 N.W.2d at 383–84. The first factor considered by this court in determining if the retroactive application of the statute violated due process was whether its retroactivity would be "harsh and oppressive." *Id.* at 608, 102 N.W.2d at 384. In using this factor, this court applied the federal due process standard used by the Supreme Court at the time. *See, e.g., Welch*, 305 U.S. at 147, 59 S. Ct. at 125–26, 83 L. Ed. at 93.

The second factor this court considered in *City National Bank of Clinton*, when determining if the retroactive application of the statute violated due process, was the period of retroactivity. *City Nat'l Bank of*

*Clinton*, 251 Iowa at 608–09, 102 N.W.2d at 384. Consideration of the period of retroactivity is the same as the second factor used by the Supreme Court in *Carlton*. *Carlton*, 512 U.S. at 32–33, 114 S. Ct. at 2023, 129 L. Ed. 2d at 29–30. In applying this factor under the Iowa Constitution, this court stated the period of retroactivity should extend "no further than two years, or up to the adjournment of the last previous legislative session." *City Nat'l Bank of Clinton*, 251 Iowa at 608–09, 102 N.W.2d at 384. This limitation on retroactivity prevents the legislature from enacting a tax that a prior legislature did not have the political will to enact. *See* Iowa Code § 2.2 (2007) (stating a regular session of the general assembly lasts for two years with the session beginning in the odd-numbered year).

The other case decided by this court dealing with the retroactivity of a tax statute was *Shell Oil Co.* There, a taxpayer claimed the retroactive application of a tax law dealing with the deductibility of a windfall profit tax violated the Federal Constitution's Due Process Clause. *Shell Oil Co.*, 417 N.W.2d at 430. In *Shell Oil Co.*, this court reaffirmed the two-factor test it applied in *City National Bank of Clinton* and held the retroactive application of the tax did not violate due process. *Id.* at 431–32.

I believe the proper test to determine if a retroactive tax meets the due process requirements of the Federal and State Constitutions is whether the retroactive application of the tax statute is supported by a legitimate legislative purpose furthered by rational means. I also believe the two factors used by the Supreme Court in *Carlton* is the proper analysis to determine if the retroactive application of the statute is supported by a legitimate legislative purpose furthered by rational means. The first factor requires the court to determine whether the

legislative body's purpose in enacting the retroactive application of the statute was illegitimate or arbitrary. The second factor requires the court to determine whether the legislature enacted only a modest period of retroactivity. Labeling the tax as a tax enacted by a curative statute does not change this analysis.

I agree with the majority's analysis that the enactment of Iowa Code section 477A.7(5) is supported by a legitimate legislative purpose furthered by rational means. The majority, however, stops its analysis of the constitutionality of the statute at this point by labeling the tax as a tax authorized by a curative statute. Here, the majority and I part ways. In determining the constitutionality of section 477A.7(5), the court must also examine the period of retroactivity to determine if the tax violates substantive due process under the Federal and State Constitutions.

Under a federal constitutional analysis, the modest period of retroactivity does not have a bright-line rule. Justice O'Connor suggested in her concurring opinion that "[a] period of retroactivity longer than the year preceding the legislative session in which the law was enacted would raise, in [her] view, serious constitutional questions." *Carlton,* 512 U.S. at 38, 114 S. Ct. at 2026, 129 L. Ed. 2d at 33 (O'Connor, J., concurring). Justice Scalia, in his concurring opinion with Justice Thomas joining, urged abandonment of the modest-period-of-retroactivity factor and proposed the Court should consider the taxpayer's reliance on the existing law as the second factor. *Id.* at 40, 114 S. Ct. at 2026–27, 129 L. Ed. 2d at 34 (Scalia, J., concurring). However, the majority of the Court applied the modest-period-of-retroactivity factor, but did not specify a certain period of retroactivity that would comport with due process under the Federal Constitution. *Id.* at 32–33, 114 S. Ct. at 2023, 129 L. Ed. 2d at 29–30. Rather than

specifying a specific period of retroactivity, the majority cited its prior decisions holding that a modest retroactivity period is " 'customary congressional practice' " and that a retroactive application of slightly greater than one year will not violate the Federal Due Process Clause. *Id.* (quoting *Darusmont,* 449 U.S. at 296–97, 101 S. Ct. at 552, 66 L. Ed. 2d at 517).

The Supreme Court has upheld retroactive federal tax laws against federal due process challenges when the period of retroactivity was less than fourteen months. *See id.* at 28–29, 114 S. Ct. at 2021, 129 L. Ed. 2d at 26–27 (upholding a fourteen-month retroactive federal tax law against a due process challenge); *Hemme,* 476 U.S. at 562, 106 S. Ct. at 2074–75, 90 L. Ed. 2d at 544–45 (upholding a four-month retroactive federal tax law against a due process challenge); *Darusmont,* 449 U.S. at 294–95, 101 S. Ct. at 550–51, 66 L. Ed. 2d at 516 (upholding a ten-month retroactive federal tax law against a due process challenge); *Hudson,* 299 U.S. at 501, 57 S. Ct. at 310, 81 L. Ed. at 372 (upholding a one-month retroactive federal tax law against a due process challenge). The Supreme Court has also upheld a retroactive state tax law against a due process challenge that reached back two years. *Welch,* 305 U.S. at 141–42, 59 S. Ct. at 123, 83 L. Ed. at 90. There, the Supreme Court emphasized that the Wisconsin legislature met biannually and passed its curative act "at the first opportunity after the tax year in which the income was received." *Id.* at 150–51, 59 S. Ct. at 127, 83 L. Ed. at 95.

Under the Iowa Constitution, this court has developed a bright-line rule, consistent with Justice O'Connor's concurring opinion in *Carlton,* for the modest period a legislature can apply a retroactive tax. In *City National Bank of Clinton,* this court applied a state due process analysis and held that for a retroactive tax to be valid, the period of retroactivity

should extend "no further than two years, or up to the adjournment of the last previous legislative session." *City Nat'l Bank of Clinton*, 251 Iowa at 608, 102 N.W.2d at 384. I believe under an Iowa constitutional due process analysis, this court should continue to apply this bright-line rule because this limitation on retroactivity prevents the legislature from enacting a tax that a prior legislature did not have the political will to enact.

Because this court has held the Iowa Constitution's due process clause has a bright-line rule as to what constitutes a modest period of retroactivity, I would analyze the constitutionality of section 477A.7(5) under the due process clause of the Iowa Constitution. Although the legislature acted promptly in enacting section 477A.7(5) after this court announced its decision in *Kragnes*, the legislature did not include a period of retroactivity within the bright-line rule established in *City National Bank of Clinton*. In fact, the legislature chose to give section 477A.7(5) an unfettered period of retroactivity. *See* Iowa Code § 477A.7(5). This unlimited period of retroactivity far exceeds the bright-line rule that the period of retroactivity should extend "no further than two years, or up to the adjournment of the last previous legislative session." *City Nat'l Bank of Clinton*, 251 Iowa at 608, 102 N.W.2d at 384. Therefore, I would hold, separately and independently from a federal due process analysis and in the exercise of this court's exclusive prerogative to determine the constitutionality of an Iowa statute under the Iowa Constitution, that section 477A.7(5)'s unlimited period of retroactivity violates the due process clause contained in article I, section 9, of the Iowa Constitution.

However, I would not end the inquiry here. In construing a statute the court's ultimate goal is to ascertain and, if possible, give effect to the

intention of the legislature. *Janson v. Fulton*, 162 N.W.2d 438, 442 (Iowa 1968). Additionally, it is the court's duty in construing a statute to preserve it and render it consistent with the state constitution, if possible. *Hines v. Ill. Cent. Gulf R.R.*, 330 N.W.2d 284, 290 (Iowa 1983).

It is clear that when the legislature enacted section 477A.7(5), it intended to retroactively authorize the collection and retention of a cable franchise tax, including the fees collected in excess of the municipality's reasonable costs of inspecting, supervising, or otherwise regulating the franchise. Accordingly, if I were to hold section 477A.7(5) unconstitutional because of its unlimited period of retroactivity, I would be defeating the legislature's clear intent. Therefore, rather than holding the statute entirely unconstitutional, I believe the proper remedy would be to hold unconstitutional only that part of the retroactive period that is inconsistent with the due process principles contained in this dissent. *See Peterson v. Comm'r of Revenue*, 825 N.E.2d 1029, 1037–41 (Mass. 2005) (giving a statute limited retroactivity after the court held it could not allow the period of retroactivity as enacted by the legislature). Consequently, I would hold section 477A.7(5) can be applied retroactively, but its period of retroactivity shall not extend further than two years, or up to the adjournment of the last legislative session.

The last legislative session prior to the enactment of section 477A.7(5), ended May 3, 2006. *See* Iowa Sen. J., 81st G.A., Reg. Sess., at 1090 (2006); Iowa H.J., 81st G.A., Reg. Sess., at 1755 (2006). Thus, under my analysis, the city could collect cable franchise taxes beginning on May 3, 2006. However, I believe any retention of cable franchise taxes prior to that date violates the due process clause contained in article I, section 9 of the Iowa Constitution.

The substantive component of the Due Process Clause "bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.' " *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S. Ct. 975, 983, 108 L. Ed. 2d 100, 113 (1990) (quoting *Daniels v. Williams,* 474 U.S. 327, 331, 106 S. Ct. 662, 665, 88 L. Ed. 2d 662, 668 (1986)).  By not applying the proper due process analysis, the majority permits municipalities to collect unauthorized taxes and legitimize them later, without temporal limitation.  The majority's holding under this factual situation gives credence to Justice Scalia's notion that substantive due process is an oxymoron.  *Carlton,* 512 U.S. at 39, 114 S. Ct. at 2026, 129 L. Ed. 2d at 33 (Scalia, J., concurring).

Hecht, J., joins this dissent.